## OSCAR PAUL REYNOLDS v. STATE.

No. A-9059.   Oct. 2, 1936.
(61 Pac. [2d] 269.)

James M. Hays, Jr., for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DAVENPORT, J.   The parties in this opinion will be referred to as they appeared in the trial court.   An indictment was returned by the grand jury of Okmulgee county, in which indictment the parties were named as Louis Bingham and John Doe.   This defendant, Oscar Paul Reynolds, was tried separately, and convicted of robbery with firearms and his punishment fixed at 25 years at hard labor.   Motion for new trial was filed, considered, overruled, and exceptions saved.

This appeal is by transcript.   The minutes of the clerk of the court are shown by the transcript, and on page 5 for the first time the name of Oscar Paul Reynolds appears. The transcript shows that on July 3, 1935, Louis Bingham appeared in person and by counsel, and the defendant, Oscar Paul Reynolds, was present in person and by counsel; defendants arraigned in open court and Louis Bingham states his true name is Louis Bingham, and the court ordered the clerk to correct the name.   Each defendant waived the reading of the indictment and copies served; each defendant demanded severance, which was granted; each defendant took 24 hours to plead.   The state elects to try Louis Bingham first

On the 5th day of July, 1935, the defendant, Oscar Paul Reynolds, filed his motion to quash the indictment, and on the 6th day of July, 1935, the defendant, Reynolds, filed an amended motion to quash the indictment, which amendment was assigned for hearing July 8, 1935, at 1 o'clock p. m., and the hearing was passed until July 9, 1935, at 9 o'clock a. m.

The transcript further shows that the hearing on the motion and amended motion to quash the indictment came up for trial on July 11, 1935.   Testimony of Fred E. Brown, who was the only witness testifying before the

grand jury, was called by the defendant, and testified in substance:

"My name is Fred E. Brown; I was before the grand jury and gave evidence in two cases; I was called there concerning Oscar Paul Reynolds; I did not testify as to any particular name, I described the other party that was in the kidnapping; I did not know the defendant's name. The grand jury inquired into the question of my being high-jacked on March 20, 1934; I don't know whether I can give the evidence exactly as I gave it to the grand jury; I described the kidnapping as it took place; I identified one of the fellows, but did not get to see the other one, yet I just described him as I pictured him to be; they had not picked the other one up and I could not make any identification of him; as near as I could tell he was around five feet eight inches tall, and weighed about 150 to 160 pounds, and was around 29 years old; I might have told them what kind of clothes he had on; he had on a jacket, a light hat, and dark pair of pants; I described how he held the gun on me; he held the gun on me until we got on the other side of the Barnsdall plant; from the description I gave I could not positively stick my finger at him and say it was him."

On cross-examination witness stated:

"I had been high-jacked; there were two of them, I described both parties as near as I could to the grand jury. Previous to the time I testified I had observed one of the defendants over at Okemah, in the sheriff's office; I explained this to the grand jury. As near as I could remember the way I told it, I may vary, we walked in to the sheriff's office and I expected to find the one I was looking for, but there were 12 men in there, and when I looked around I found one I knew to be the driver of the car, and told the sheriff it was the one in the window, and so it was definite, I had him pictured, I had seen him plain enough not to be mistaken about it; I told the grand jury this fellow drove the car and took my money out of my pocket. The description of the other fellow

that had not been arrested I gave the grand jury; I told the grand jury I heard one of the fellows was named Louis Bingham. I gave a full description of one of the high-jackers, and the other I identified and stated he partici-pated in the crime.

"Before the grand jury I described and identified Louis Bingham; the other one I gave a description of, if I remember all right; he was not apprehended at that time; I told the grand jury they high-jacked me out of $12 in money; they had me get out of the car and went through my pockets and made a thorough search, the one that held the gun on me that has been described as Reynolds; Bingham was driving; he never put a gun on me. I can identify Oscar Paul Reynolds as looking like the description I gave of him. The reason I could not positively identify him is he kept his head down, with his hat over his eyes, and had the gun in my ribs; I would say he looks near enough to be him; I could not say positively that Reynolds was the man. I gave the grand jury all the description I possibly could, and the description I gave the grand jury is the description that fits the defend-ant Oscar Paul Reynolds."

The foregoing is the substance of the testimony of the only witness examined by the defendant.

The motion and amended motion to quash the indict-ment was overruled, and defendant excepted.

The defendant in his brief insists his amended mo-tion to quash the indictment should have been sustained by the trial court, and in support of his contention that his amended motion to quash should have been sustained, relies upon Hayes v. State, 3 Okla. Cr. 1, 103 Pac. 1061. An examination of the Hayes Case shows that the de-fendant had his counsel file a motion to set aside the in-dictment on the ground that it was not found by a legal grand jury, and that no witnesses appeared before and no evidence of any kind was returned, and that the court

had no jurisdiction of the defendant, and made application to the trial court to set a time for taking of testimony in support of his motion, and the trial court refused to set a time for the defendant to present his motion to quash the indictment, and this court held that it was reversible error for the court to refuse to let the defendant present his testimony in support of his motion to quash the indictment.

In Estill v. State, 43 Okla. Cr. 99, 277 Pac. 256, in the second paragraph of the syllabus, this court said:

"Where defendant's motion to set aside the indictment, and his application to take testimony in support thereof, is in proper form, it presented a right to offer the proof in support of said motion and the right to be heard thereon. It was reversible error for the court to refuse to permit the defendant to examine the witnesses offered as to what evidence they gave, or, in the case of grand jurors, what evidence was heard by the grand jury."

It will be seen from Hayes and Estill Cases, supra, that this court held it reversible error for the trial court to refuse to allow testimony to be offered in support of the motion to quash the indictment. The facts in these cases relied on by the defendant are not the same as in this case, for the reason that the transcript of the record shows when the defendant filed his motion to quash the indictment a date was fixed by the court for hearing the motion, and testimony was taken in support of the same. At the conclusion of the testimony and argument of counsel the motion to quash the indictment was denied by the court on the ground that the testimony offered in support of the same showed the grand jury had testimony before it which authorized the return of the indictment against the party designated in the indictment as John Doe, but later on in the proceedings it was disclosed his name was

Oscar Paul Reynolds. The court did not err in overruling the motion of the defendant to quash the indictment.

The next and only question presented to this court by the transcript is the question as to whether or not the defendant had due process of law. As shown by the transcript, the defendant was arraigned on July 5, 1935, and took time to plead; defendant then filed his motion to quash the indictment and on the 6th day of July, 1935, filed his amended motion to quash the indictment; the hearing on the motion was passed from time to time until July 11, 1935, when the same was heard, overruled, and defendant excepted. The record also shows that on July 11, 1935, the county attorney served a list of witnesses to be used against him in the trial of the case on the defendant; the case was called for trial on the 15th day of July, 1935, and the transcript shows that Oscar Paul Reynolds was arraigned, entered his plea of not guilty, and objected to going to trial at once, for the reason that the issues were not joined 10 days prior to the day the case was called for trial. The defendant complains that he did not have time after he entered his plea of not guilty to prepare for trial, and in his motion for a continuance on that ground he states that Louis Bingham was in the county jail of Okmulgee county, and the sheriff and jailor would not permit him to talk to Louis Bingham until 1:30 p. m., the day the case was set for trial. These statements do not show sufficient diligence on the part of the defendant, as the record shows he was in custody and appeared in open court and was arraigned on the 3d day of July, 1935, and took time to plead, and on the 5th day of July, 1935, filed his motion to quash the indictment. Testimony was taken on the motion of the defendant to quash the indictment, which was overruled, and exceptions saved.

The transcript further shows that on the 11th day of July, 1935, the defendant was served with a list of the witnesses, together with their post office and street address, that would be used against him in the trial of his case. The transcript further shows that on the 15th day of July, 1935, the defendant entered his plea of not guilty, the 15th of July being the day the case was set for trial.

The defendant insists that the overruling of his motion for a continuance on the ground that he did not have time to prepare for trial, and his attorney had not been able to talk with the witness Bingham, in the jail in Okmulgee county, is error requiring reversal of his case.

In Hogan v. State, 42 Okla. Cr. 188, 275 Pac. 355, in the second paragraph of the syllabus this court said:

"A person charged with crime is entitled to a reasonable time under all the circumstances to procure his witnesses and prepare for trial. He is required to exercise diligence in procuring or attempting to procure his witnesses and to make necessary preparation."

Our statute does not fix the time in criminal cases which should intervene before a case should stand for trial after arraignment and plea of not guilty. A reasonable time should be allowed. What is a reasonable time will depend on the circumstances in a particular case.

In this case the defendant was arraigned 12 days before his case was called for trial. Testimony in support of his motion to quash heard, considered, and overruled. List of witnesses served on him four days before the case was called for trial. The defendant, in his motion asking time to prepare for trial, names only one witness, Louis Bingham, who was in the county jail in Okmulgee. If, as stated by the defendant, the sheriff and jailer refused to allow his attorney to consult Bingham, a codefendant,

the attorney should have applied to the court for an order requiring the sheriff and the jailor to permit the defendant's attorney to consult with Bingham. The defendant had known for several days that Bingham was in the jail at Okmulgee, and should have exercised more diligence than the transcript shows.

Counsel for the state and the defendant proceeded as if the plea of not guilty had been entered. Under the circumstances in this case, we think the defendant had sufficient time to prepare his case for trial before a formal plea of not guilty was entered.

Finding no errors in the record warranting a reversal, the judgment of the trial court is affirmed.

EDWARDS, P. J., and DOYLE, J., concur.