FLYNT v. STATE.

No. A-11080.   March 15, 1950.

(216 P. 2d 344.)

78

Darnell & Gibson, Clinton, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

JONES, P. J. The defendant, Elbert Flynt, was charged by information filed in the district court of Roger Mills county, with the crime of assault with a sharp and dangerous weapon, with intent to do bodily harm upon one Evert Spitler. Upon trial to a jury, a verdict was rendered finding the defendant guilty, but leaving the punishment to be assessed to the court. On a separate sheet of paper attached to the verdict the jury stated, "We recommend a suspended sentence." The trial court accepted the recommendation of the jury and thereupon sentenced the defendant to serve two years' imprisonment in the penitentiary, suspended his sentence during good behavior, and defendant appeals. The evidence of the state showed that Evert Spitler and his wife, in 1946, lived in the town of Hammon, and operated a cafe; that the defendant during a part of the time had worked for Spitler at the cafe. Spitler was working away from home for several weeks, and during this period of time, he received a letter from his mother-in-law advising him to return home, "if he wanted to save his home." Spitler returned to Hammon and accused the defendant of trying to steal his wife and break up his home. When Spitler made this statement to the defendant, the defendant quit his employment at the cafe. Later Mrs. Spitler sued Spitler for a divorce which was uncontested, and she was given custody of their small child. Four days after the divorce became final, Mrs. Spitler and the defendant were married.

Spitler testified that on the night of June 14, 1947, he was sitting in front of a barbershop in Hammon, and saw the defendant sitting in the shop; that he was wanting to discuss with defendant the matter of the care and custody of his child, so he went into the shop and said to the defendant, "I want to talk to you about my baby," and defendant replied, "To hell with you," and reached for his pocketknife. Spitler hit him with his fist; that the defendant's dad then started striking him and defendant also struck him several times with a pocketknife, causing severe wounds on the left side of his body and on his back; that he was in the hospital about eleven days on account of these injuries.

On cross-examination, Spitler admitted that he testified at the preliminary hearing that when he went to the barbershop, he asked defendant, "Is it as good legal as it was illegal?"

The defendant testified that after he quit working for Spitler at the cafe, he had had a controversy with him once or twice; that on the night of the affray, he saw Spitler on the street, and that he walked into the barbershop to avoid meeting him as he did not wish to have any trouble; that Spitler came into the barbershop and said, "Well, Creepy is that stuff any better now than it was illegal?" That he, the defendant, did not say anything, but Spitler pulled his hand out of his pockets and defendant saw he had on a pair of knucks; that Spitler then commenced to strike him and beat upon him with the knucks; that his father tried to separate them, but Spitler continued to hit him with the knucks, and defendant pulled his pocketknife and struck at Spitler several times, solely to defend himself; that he and Spitler had had fights on three occasions after Spitler's wife had divorced him, and

at one time Spitler had tried to run over him while Spitler was driving an automobile along the street.

Several witnesses testified in support of the version of the affray related by the prosecuting witness and also by the defendant. It is our view that the evidence preponderated in favor of the defendant, but the state's evidence was sufficient if credited by the jury to justify them in concluding that the defendant was guilty as charged. Pictures of the body of Spitler were identified and admitted in evidence. These pictures were taken about three weeks after the assault occurred and clearly showed many lacerations, some of them apparently deep enough to be serious.

The physician who attended Spitler testified that at least one of the wounds had penetrated the chest cavity. The defendant himself suffered several lacerations in the fight, and his attending physician testified that some of the wounds sustained by the defendant could not have been made by a man's fist. The evidence was sufficient, however, to raise an issue for the determination of the jury.

The first assignment of error pertains to the alleged misconduct of counsel for the state and the admission of incompetent evidence.

In the opening statement of the prosecutor to the jury, he said:

"By Mr. J. Z. Barker: Prior to June 1947 the defendant was employed by the prosecuting witness Mr. Spitler in the business there at Hammon; that in the course of the employment certain intimacies between the prosecuting witness's wife and the defendant— By Mr. Darnell: We object to that statement of counsel for the reason it is highly irrelevant and improper. By the Court: I believe that I would get down to the incident involved.

Sustained. By Mr. Barker: Exception. The evidence will further show that matters went from bad to worse until finally Mr. Spitler's home was broken up. By Mr. Darnell: We object to the statement of counsel for the reason it is improper. At this time the defendant moves the court to discharge the jury and declare a mistrial because of the improper remarks of the special prosecuting attorney for the state. By the Court: The objection to the statement is sustained; but the motion to discharge the jury is overruled."

The record discloses that both sides throughout the trial continually referred to trouble that had arisen between Spitler and the defendant over Spitler's wife. The parties had had arguments and fisticuffs on two or three occasions prior to the time of the altercation in which Spitler was cut.

The trial court did a good job of restricting the evidence to the facts surrounding the altercation in the barbershop, and he did not allow either side to offer much evidence concerning the collateral events that preceded this altercation, although each of the parties attempted to offer a large amount of evidence touching on the question of who was to blame in the altercations that preceded the one out of which this prosecution arose.

In Starks v. State, 67 Okla. Cr. 156, 93 P. 2d 50, this Court stated:

"Where a defendant objects to the introduction of evidence which is admitted, and afterwards introduces the same evidence himself, it is not ground for reversing the judgment although the evidence objected to was incompetent. * * *

"Explanatory circumstances and declarations connected with the commission of a homicide, which have a tendency to shed light on the motives of the parties, are admissible in evidence, including antecedent declarations made by the deceased and the defendant where they form

some link in the chain of circumstances, explanatory of their motives or other vital issues involved."

It has been held that where there have been previous controversies and difficulties between the defendant and prosecuting witness, the existence of such controversies and difficulties may be shown by either party, in order to show the state of feeling existing between them; but the trial court would not be warranted in trying the merits of such controversies, nor in entering upon a detailed examination of the facts as to who was right and who was wrong in any of these former difficulties. McHugh v. Territory of Oklahoma, 17 Okla. 1. 86 P. 433.

The trial court erred in refusing to permit the wife of defendant to testify. The court refused to permit her testimony on the ground that she had remained in the courtroom during the trial and after the witnesses had been excluded from the courtroom under the rule asked for by the defendant. The fact that a witness, who is under the rule, remains in the courtroom during the trial does not thereby make her incompetent as a witness; such fact only goes to affect her credibility as a witness or subjects her to punishment for contempt of court for remaining in the courtroom after all of the witnesses had been excluded. However, the defendant offered to prove by the witness that she was the former wife of Spitler, and that the defendant did not break up her home as contended for by Spitler. However, this same evidence had been established by the testimony of defendant, and others, and it would have been cumulative. The court should have allowed the witness to testify, but under all the facts and circumstances of the case, we do not believe it to be reversible error.

It is next contended that the court clerk in preparing the trial docket prepared the same only 11 days before

the commencement of the trial of cases set on the docket, and therefore did not comply with the statute which requires the clerk of the court to prepare a trial docket at least twelve days before the final day of the term of court. 12 O. S. 1941 § 663.

The above statute governs the trial of civil cases. There is no statute fixing the time in criminal cases which shall intervene before a case shall stand for trial after arraignment and plea of not guilty. A reasonable time must be allowed. What is a reasonable time will depend upon the facts and circumstances in each particular case. Morse v. State, 63 Okla. Cr. 445, 77 P. 2d 757; Reynolds v. State, 60 Okla. Cr. 92, 61 P. 2d 269; Prescott v. State, 56 Okla. Cr. 259, 37 P. 2d 830. No contention is made that defendant did not have adequate time to prepare for trial.

The contention of defendant that the court erred in refusing to admit in evidence the deposition of Dalton Taylor offered by the defendant, cannot be sustained for the reason that the defendant did not undertake to comply with the statutory provisions relating to the taking of depositions in a criminal case. 22 O. S. 1941 §§ 761 to 766.

There was no exception save to the giving of any instructions, and the examination of them does not disclose that any are so fundamentally erroneous as to require a reversal.

We call attention to the fact that the execution of the judgment rendered against the defendant was not stayed by the filing of an appeal bond as required by statute. 22 O. S. 1941 § 1057. Although, the sentence was suspended, the same took effect immediately upon the pronouncement of judgment where the defendant did not ex-

ecute an appeal bond for the purpose of staying the execution of the judgment. The defendant has now completely served the sentence and is no longer subject to restraint pursuant to the judgment which was pronounced against him. Ex parte Miller, 88 Okla. Cr. 441, 203 P. 2d 890; Ex parte Bell, 57 Okla. Cr. 257, 47 P. 2d 886; Ex parte King, 40 Okla. Cr. 21, 266 P. 511.

The judgment and sentence of the district court of Roger Mills county is affirmed.

BRETT and POWELL, JJ., concur.