James Otis SAVAGE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. M–74–153.

Court of Criminal Appeals of Oklahoma.

July 22, 1974.

Rehearing Denied Aug. 16, 1974.

Carroll Samara and Lawrence H. McMillin, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., for appellee.

OPINION

BUSSEY, Judge:

Appellant, James Otis Savage, hereinafter referred to as defendant, was charged

with the offense of Maiming, tried and convicted in the District Court, Oklahoma County, Case No. CRF–73–1817, with the offense of Aggravated Assault. In accordance with the jury verdict, he was sentenced to serve one (1) year imprisonment in the County Jail and to pay a fine of Five Hundred Dollars ($500.00), and from said judgment and sentence, a timely appeal has been perfected to this Court.

Briefly stated, the facts show that at approximately 9:30 p. m., June 29, 1973, the defendant and the complaining witness, Joe Dwight Austin, were involved in an altercation at the Del Rancho Drive-in Restaurant in Del City, Oklahoma. As a result of the fight the complaining witness sustained a blow to the face with a glass, suffered numerous cuts to his face and lost his left eye.

The first witness called was the complaining witness, Joe Dwight Austin, who testified that he and a friend had gone to the drive-in to meet their girlfriends, when the fight occurred. Austin said he was standing outside a car, talking to friends when someone called him over to the car in which the defendant was a passenger. He said that although he had never seen the defendant before, the defendant accused him of dating his wife, Mrs. Jo Savage, which he denied.

Austin, who at the time had a splint-like cast on his right hand, argued with the defendant for a short time when the defendant, allegedly threatening to break his other hand, got out of the car, struck the witness, and the fight started. Austin said that the two men fought for several minutes, during which time the defendant tried to get Jerry Van Curen, a man in the car he had gotten out of, to help him. Van Curen refused to become involved and a few moments later the fight stopped.

According to Austin, after the fight stopped he walked back to his own car and was getting ready to get in and leave when the defendant approached him, pushed a girl talking to Austin out of the way, and hit Austin across the face with a drinking glass. The witness testified that as a result of the glass being shattered in his eyes, he had lost vision in his left eye, in addition to sustaining numerous facial scars.

On cross-examination the witness admitted that he might have struck the defendant with his cast. He also explained that he had been with the defendant's wife at a couple of parties, but that nothing had transpired between them. Austin further testified that he had had several beers on the night of the incident, but he did not think the defendant had been drinking.

Diana Morrison, girlfriend of the complaining witness, who was sitting in Austin's car when the fight took place, testified to substantially the same facts as did Mr. Austin, including the fact that Austin was getting ready to get in his own car after the fight had ended when the defendant struck him with the glass. Debbie James, best friend of Diana Morrison, testified that she was standing between her car and that of Austin's, talking with Austin after the altercation, when the defendant walked between the cars and shoved her away, telling her that he didn't want to hurt her. She said that Austin had turned his head to look at her, and that as he turned back, the defendant smashed him in the face with the glass.

For the defense, Jerry Van Curen testified that he and the defendant had been driven by Skeet Williams to the drive-in on the night of the incident to order some sandwiches to take home to their wives. He said that the defendant and Austin were arguing about whether or not Austin had been out with the defendant's wife. Van Curen said the defendant who was in the backseat of the car asked to get out, and that when he stepped outside the car the fight began. He said that Austin was repeatedly using his arm cast to strike the defendant in the head. Van Curen further related that during the fight the defendant had asked him to help out, but that he refused since both parties in the fight were his friends.

The witness said that during the fight, which he thought was one continuous occurrence rather than two separate events, the defendant had indicated that he'd had enough and wanted to quit fighting, but the fighting didn't stop. The witness said he never saw the defendant take any object from the car and that he didn't see Austin struck with the glass because during this time span he was paying for the food he'd ordered.

On cross-examination Van Curen said that a third party who had come to their car, told the defendant that Austin had been taking Mrs. Savage out and that the third party had called Austin over to the car when the fight broke out. The witness said that he did not see who struck the first blow because he was ordering food. He also reiterated that he and the defendant had not come to the drive-in seeking Austin, but to order food.

Next in the trial, the defense sought to call Mrs. Jo Savage, wife of the defendant as a witness, but her testimony was excluded over counsel's objection because she had been present in the court room during prior testimony, although the Rule had been invoked. Thereafter the defendant was allowed to make an offer of proof of her testimony to the Court.

Finally, the defendant appearing in his own behalf, testified that on June 29, 1973, he went to the Del Rancho Drive-in with two friends to order some food to take home. He said that they had just parked when a former co-worker of his, whom he knew only by the first name of Danny, came to their car to talk. The defendant said that some weeks earlier he had asked Danny to help him find out if Mrs. Savage was going out with other men, and if so, with whom. When Danny came to the car on the night of the fight he said that Joe Austin, the man Mrs. Savage had supposedly gone with, was at the drive-in. Next Danny called Austin to the car.

The defendant said that he accused Austin of the acts, but that he couldn't hear Austin's replies very well because Van Curen and Williams were ordering food. So, the defendant said he asked to be let out of the backseat of the car to talk to Austin, and that Austin struck him across the back of the neck as he was bent over, stepping from the car. The defendant testified that although they were both attempting to strike blows, he had been stunned by Austin and was never fully able to hit him. The defendant maintained that as Austin continued to hit him in the head and face with the cast, he called for Jerry Van Curen to help him, but that Van Curen declined.

After trying to give up, the defendant said he was knocked toward the car where he reached inside, felt an object, and picked it up to use in warding off the complaining witness. The defendant denied having ever talked to or pushed Debbie James out of the way. Further he testified repeatedly that the shattering of the glass in the face of Austin occurred during the heat of the battle and adjacent to the car he'd come in, and was done as an act of self-protection without any intent on his part to severely injure Austin.

On cross-examination the defendant admitted asking Danny what he had found out about his wife and that Danny had told him about a party Austin had supposedly taken her to, and had called Austin to the car. The defendant also explained that some months before, he and his wife had been separated and that his curiosity about her activities during this period had been aroused a few weeks before the encounter. The defendant reiterated on cross-examination that he cut Austin during the midst of the fight, and not in a separate, subsequent encounter, and that the incident had not occurred next to Austin's car.

Testifying on rebuttal, Joe Austin, Debbie James and Diana Morrison used diagrams to show the location of the defendant's car and Austin's car and to restate the positioning of Austin at the time of the cutting as being beside his own car after a time lapse in the fight.

██ In his first proposition of error, the defendant alleges that the trial court erred in its failure to instruct on the simple assault and battery as a lesser included offense of maiming, the crime with which the defendant was originally charged.

He relies primarily on Barnes v. State, Okl.Cr., 490 P.2d 783 (1971) in which the defendant was charged with Assault and Battery with a Dangerous Weapon and found guilty of the lesser included offense of Aggravated Assault and Battery. The facts in the case were somewhat analogous to those in the instant case, because the defendant had hit the complaining witness in the face with a beer glass, leaving an eye-to-chin cut requiring 60 stitches. On appeal, in upholding the verdict, this Court said:

"We need only to observe that the defendant was charged with Assault and Battery With a Dangerous Weapon, and that the jury was instructed on the two lesser included offenses of Aggravated Assault and Battery and *Assault and Battery.*" (Emphasis added)

In Gann v. State, Okl.Cr., 397 P.2d 686 (1964), this Court held that in an Assault and Battery with a Dangerous Weapon, the failure to instruct on simple Assault and Battery is error after the defendant had requested the same. In that case this Court said:

"This instruction on simple assault and battery should have been given for other reason. The trial court has a duty to instruct on a lesser included offense, not on any lesser offense, but on *all* lesser included offenses." (Emphasis supplied by Court.)

This Court further states:

"The court's refusal to so instruct after being requested in writing to do so, deprived the defendant of a precious and fundamental right and further violated the principle that the court must submit the case to the jury for consideration on every degree of assault which the evidence in any reasonable view suggests."

The State in reply to defendant's first proposition relies on Jennings v. State, Okl.Cr., 506 P.2d 931 (1973), another case of Assault and Battery with a Dangerous Weapon where the refusal to give instructions on Simple Assault and Battery was upheld on appeal. It should be pointed out, however, that in that case the defendant testified that he had not committed any offense at all, so that the jury could rightfully only convict him of the crime charged or acquit him of all offenses. Obviously, that situation is not the same as in the instant case.

Perhaps it should be pointed out that although the defendant was charged with Maiming, a felony carrying a maximum of seven (7) years and a minimum of one (1) year imprisonment, with a maximum One Thousand Dollar ($1,000.00) fine, the jury was also instructed on the lesser offense of Aggravated Assault and Battery which carried a maximum of one (1) year imprisonment and a fine of a maximum of Five Hundred ($500.00). The jury, in reaching their decision and setting the punishment, saw fit to assess the maximum possible under the lesser offense, so we find the necessity of instructing on Simple Assault and Battery or the prejudice to the defendant for the failure to so instruct is lacking in the instant case.

In Gonzales v. State, Okl.Cr., 388 P.2d 312 (1964), an aggravated assault case, this Court held that before a conviction can be reversed for error in admission or rejection of evidence or instructions, the appellate court must determine that the appellant was injured thereby and the question of the appellant's guilt or innocence of the offense charged must be considered. Further authority for this decision is found in Quick v. State, 51 Okl.Cr. 121, 299 P. 242 (1931), holding that where it appears from the entire record that the accused's guilt is conclusively established, alleged errors in instructions which could not have prejudiced the defendant do not warrant reversal.

Although the defendant requested that instructions on Simple Assault and Battery be given, and although it would have been appropriate under analagous cases to have done so, in light of the verdict returned by the jury and the maximum punishment assessed by them, we can assume that even had the instructions been included the jury would not have been inclined to convict on the lesser offense, and hence the failure to include them was, if error, harmless error.

■ In his second proposition the defendant urges that the court erred in refusing the jury's request after they had begun deliberations, to read back to them the testimony of witness Jerry Van Curen. Under 22 O.S.1971 § 894:

> "After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony or if they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into the court. Upon their being brought into court, the information required must be given in the presence of, or after notice to the county attorney and the defendant or his counsel, or after they have been called."

In Kovash v. State, Okl.Cr., 519 P.2d 517 (1974), this Court interpreted the above statute as not creating an absolute right to have testimony re-read, but a matter left to the discretion of the trial court subject to review by this Court. Jones v. State, Okl.Cr., 456 P.2d 610 (1969), dealing with an identical proposition said that the trial judge declined the request for two reasons: first, that reading the testimony of one witness a second time would be repetitious; and secondly, that a second reading would add undue emphasis to that portion of the testimony read.

Based on the above authority, we find that the decision of the trial judge was well within his discretion and should not be overturned on appeal. See *Jones,* supra.

> "We interpret the mandatory aspect of 22 O.S.1971 § 894 to be that which provides for the return of the jury to the courtroom, and for the notification of the parties to the trial that the jury is being returned for additional information, or instruction. The termination [sic] of whether or not the jury's request is required lies within the discretion of the trial judge."

Consequently, we cannot accept defendant's second proposition that the trial court erred when the requested testimony was not read to the jury. We are of the opinion that whether or not the request is honored must be determined by the trial judge.

■ In his next proposition, the defendant argues that the trial court erred in denying an exception to the rule and not allowing the defendant's wife to testify in her husband's behalf. We need only say that after the rule excluding witnesses from the courtroom during testimony has been invoked, it is solely within the sound discretion of the trial court to grant exceptions. See Sutterfield v. State, Okl.Cr., 489 P.2d 1345 (1971). In his brief, appellant relies on Flynt v. State, 91 Okl.Cr. 77, 216 P.2d 344 (1950), where this Court ruled that the trial court had erred in not allowing the wife of the defendant to testify in a case with facts similar on its face. However, this Court said that the testimony, had it been allowed, would have been merely cumulative and hence it was not reversible error to deny an exception to the rule.

■ Finally, the defendant contends that on the basis of cumulative alleged errors which separately might not have been grounds for reversal, the case should be reversed. We find this contention without merit for two reasons, first that there have not been cumulative errors, and secondly that it is only when the evidence is insufficient to sustain the conviction that the verdict will be set aside. In Smith v. State, 81 Okl.Cr. 412, 165 P.2d 381 (1946), wherein the defendant was charged and convicted of maiming after he had broken a bottle in the face of another man causing

the loss of his right eye, this Court said in its syllabus:

"It is only when the evidence is insufficient to sustain the conviction that verdict will be set aside, and where the evidence and reasonable and logical inferences to be drawn from it are sufficient to convince jury beyond a reasonable doubt of guilt, verdict will not be set aside."

In conclusion, in view of the overwhelming evidence at trial, on the basis of the findings previously discussed, and the fact the sentence was within the possible punishment assessable, we find the defendant's contentions to be without merit, and the judgment and sentence appealed from is affirmed.

BLISS, P. J., concurs.

BRETT, J., concurs in results.