George Allen SOAP, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–688.

Court of Criminal Appeals of Oklahoma.

April 1, 1977.

Jesse L. Leeds, Muskogee, for appellant.

Larry Derryberry, Atty. Gen., Harold T. Garvin, Jr., Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge.

Appellant, George Allen Soap, hereinafter referred to as defendant, was charged in the District Court, Muskogee County, Case No. CRF–75–191, with the offense of Sodomy, After Former Conviction of a Felony. The case was tried to a jury, and a guilty verdict was returned. Punishment was set at forty-five (45) years' imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

The State's first witness was Gerald Belyeu, chemist with the Oklahoma State Bureau of Investigation. He testified as to the chain of custody of certain clothing

seized from the defendant at the time of his arrest, to-wit: a red shirt, blue trousers, men's underwear, cowboy boots and hat.

Ann G. Reed, Oklahoma State Bureau Chemist, was the State's second witness. She received the aforementioned clothing from Belyeu, and conducted certain tests thereon. The blue trousers and the pair of men's underwear tested positive for Group A blood, and the red shirt proved positive for Group O blood.

Molly Louise Oates was the State's third witness. She testified that on Sunday, June 8, 1975, at about 9:00 a.m., she saw the defendant in Charles Witt's apartment on Court Street in Muskogee. She further testified that he was wearing a red shirt, blue pants, cowboy boots, and hat. The witness further stated that the defendant made reference to an act of sex which he had had that night, and that the defendant further stated that the name of his partner was "Noni" or "Yanomi". The witness further testified that the defendant said that the girl lived two doors east of the witness's apartment, which is where the victim lived.

Jessie Coker was the State's fourth witness. She stated that she is the mother of Naomi Hogshooter, who was seven years old at the time of the incident. At about 10:30 p. m., on June 7, 1975, she put Naomi and another child to bed, and then fell asleep while watching television. Sometime after the T. V. station had gone off the air, she awoke and discovered her brother, Roy Vann, asleep on a divan. She got up, turned off the television and went to bed. At 8:30 a. m., June 8, 1975, she arose in order to get the children ready for church, and confronted the defendant in her living room. The defendant stated he was looking for his hat. He found it, combed his hair, and left. Naomi was present when the witness confronted the defendant, but Naomi said nothing, although she appeared frightened. The children did not feel like going to church, and went to visit their married sister instead, who lived across the street. The witness further testified that while the daughter was visiting at her sisters, the witness discovered a pair of Nao-mi's underwear, with blood spots on them, and a bed spread with similar spots. Lastly, the witness recounted how she learned from Naomi's brother that Naomi had been taken to the hospital for examination, after Naomi had told him of the attack.

Dr. Austin Bell was the State's fifth witness. Essentially he stated that he examined Naomi Hogshooter on June 8, 1975; that she gave him a history, and that he conducted a physical examination of her. He stated that the results of this examination showed that no intercourse had taken place in the vagina; that there was a small tear between the vagina and the rectum; that there were dark red stains on the inside of the thighs; that there was no damage to the anal mucosa; that there was no evidence of sperm present about her person; that in his opinion anal intercourse could take place without damage to the rectum; and lastly, that in his opinion anal intercourse had taken place. The Doctor further stated that he tested the blood of Naomi Hogshooter, and that it was blood Group "O".

Ray Jordan, a Muskogee County Deputy Sheriff, was the State's sixth witness, and he testified that he attempted to serve subpoenaes on Mary Ann Buzzard and Charles Witt, but that he had been unable to do so.

Majorie Phipps, employed with the Muskogee County District Court Clerk, as the State's seventh witness. She testified that subpoenaes for a Mary Ann Buzzard and Charle Witt were mailed to the Oklahoma County Court Clerk's Office, but that no return had been made thereon. At the conclusion of this witness's testimony, the court allowed to be read into the record the sworn testimony of Charles Witt given at the preliminary hearing of this matter.

Charles Witt's testimony at the preliminary was essentially corroborative of Molly Oates, they both being present when the defendant visited them on the morning of June 8, 1975.

Naomi Hogshooter, the victim of the crime, was the State's eighth witness. Her testimony was that in the early morning hours of June 8th, the defendant twice per-

formed the act upon her which is subject of this charge, on a bed spread in the back yard of her home. She stated that the defendant threatened her with a cigarette lighter, telling her it was capable of shooting. She further stated that the defendant said he would "knock her out" if she screamed. The witness further stated that on the night of the attack the defendant was wearing black boots, blue pants and a red shirt. She further stated that the defendant put his penis in her "bottom", and that it hurt.

John C. Mullen, Muskogee Policeman, was the State's ninth witness. Subsequent to various interviews with the victim, her sister, and Molly Oates, the witness arrested the defendant at his apartment, seizing the clothing which was introduced into evidence.

Wadie Morton, State's tenth witness, gave testimony corroborating Mullens. At one point on cross-examination, the defense counsel asked witness Morton if he had ever seen or talked to one Roy Vann, brother to the mother of the victim. The witness replied that he had not, but that Roy Vann had given a written statement to a police secretary, Helen Beatty.

Helen Beatty was the State's last witness. She identified State's Exhibit No. 10, as Roy Vann's written statement. On motion of the State, said statement was admitted into evidence, and shown to the jury.

The State then rested.

The defendant took the stand in his own behalf. He related an evening of heavy drinking with Charles Witt, Molly Oates, and several others, including Roy Vann, brother of Jessie Coker. The defendant stated that he spent the night of June 7–8, in Jessie Coker's house, and that he had sex with her. He further testified that it was in reference to Jessie Coker that he made the statement about sex to Charles Witt and Molly Oates.

The Defense then rested.

The State recalled Jessie Coker as a rebuttal witness. She denied having sex at any time with the defendant.

In his first assignment of error, the defendant contends that it was error for the court to permit a seven year old victim, Naomi Hogshooter, to testify. The defendant asserts that she was incompetent, that no hearing had been to inquire into her competency, and that it was error for the court to permit the victim's mother to stand by and hold the victim's hand while she gave testimony, citing 12 O.S.1971, § 385(2). The defendant objected to the taking of the victim's testimony, and in this regard the trial court said:

"Yes, uh-huh. Okay, let the record show that page 30 of the transcript of the preliminary hearing taken on August 28, 1975, in this case that the Honorable R. Jay Cook had an in chambers hearing with respect to this witness's competency to testify. Let the record also show that the Court with this Judge presiding has had a previous hearing in chambers with this witness and with the defendant's attorney, at that time Mr. Louis Smith present in a companion case and at that time the Court did determine that the witness is competent to testify. Now, as to the objection to Mrs. Coker standing with the witness, as long as Mrs. Coker doesn't attempt to answer any questions it's obvious that someone must be with the witness since she is of such a young age and is among a whole bunch of strangers, so the objection will be overruled and the case will be continued. Go ahead."

We have carefully examined the testimony of this child, and it is our opinion that her testimony was lucid, clear, and and devoid of ambiguity. Further, we often held that the decision to permit a child to testify is within the discretion of the trial court, and barring clear abuse, the Court of Criminal Appeals will not set aside such decision. *Lancaster v. State*, Okl.Cr., 541 P.2d 1343 (1975). Finding no error, the defendant's first assignment of error is without merit.

In his second assignment of error defendant contends that it was error for the trial court to permit the prosecution to read at

trial the testimony of Charles Witt given at the preliminary hearing. The defendant contends that the State failed to show the due diligence required in procuring the presence of this witness. Deputy Ray Jordan testified at trial that he had attempted to serve Charles Witt at his last known address in Muskogee, but was unable to do so. Jordan stated that several days prior to the issuance of the subpoena, he had talked to Witt in the Sheriff's Office in Muskogee, and that time witness gave an Oklahoma City address.

Marjorie Phipps testified that a second subpoena with Witt's Oklahoma City address was mailed to Oklahoma County Court Clerk, but had not been returned. The trial court ruled that due diligence being shown, as well as unavailability, the testimony of Witt given at the preliminary was admissible.

■ We are not convinced that the trial court ruling was correct. However, an examination of Witt's testimony revealed that it largely duplicates that given at trial by Molly Oates. The erroneous admission of evidence is not reversible where such evidence is merely cumulative. See, *Schneider v. State*, Okl.Cr., 538 P.2d 1088 (1975); *Constabile v. State*, Okl.Cr., 513 P.2d 588 (1973). This being so, the defendant's second assignment of error is without merit.

In defendant's third assignment of error he asserts that it was improper to permit the introduction of the written statement of Roy Vann into evidence, in that Roy Vann was not called as a witness. The State seeks to justify the statement's introduction as "invited error", contending that the defendant first broached the subject of Roy Vann and the statement he gave, and that this "opened the door" to its admission.

■ After careful examination of the transcript we are of the opinion that the defendant's inquiry concerning Roy Vann was not such as to "open the door" to the admission of Roy Vann's out-of-court's statement. As such, the statement remained what it was, inadmissible hearsay. However, after careful examination of the statement itself, we are further of the opinion that its admission was harmless and not prejudicial to the defendant. At most it stated that Roy Vann met the defendant at a bar, and later became acquainted with him at Charles Witt's apartment. The statement further relates that around 12:00 midnight the defendant came up to see Roy Vann at his sister's, Jessie Coker's apartment. We find this statement, and its admission to be harmless because the defendant gave testimony which corroborated these events. As such the statement was harmless beyond a doubt, being merely cumulative. Title 20, Oklahoma Statutes, § 3001, Harmless Error. See, also, *Cook v. State*, Okl.Cr., 471 P.2d 477 (1970).

In his fourth assignment of error the defendant asserts that it was error for the court to permit the State to "bolster" its case by the admission of improper evidence, to-wit: the aforementioned statement of Roy Vann, and the preliminary hearing testimony of Charles Witt. In light of what we have said regarding these, the defendant's fourth assignment of error is without merit.

■ In his fifth assignment of error the defendant asserts that the trial court erred when it refused to permit one of the defendant's witnesses to testify. Deneva Carter had been called as the defendant's first witness, whereupon the State objected on the grounds that said witness had been present in the courtroom for some time after the Rule had been invoked at the defendant's request. The trial court sustained the State's objection, to which ruling the defendant objected.

We need only note that the decision to permit a witness to testify, when that witness had been present in the court after the Rule had been invoked, is within the sound discretion of the trial court. Absent a manifest abuse thereof, this Court will not disturb its ruling. *Savage v. State*, Okl.Cr., 525 P.2d 1219 (1974).

In his sixth assignment of error, defendant contends that it was reversible error for the court to reprimand defendant's counsel,

and threaten him with a contempt citation, in the presence of the jury.

■ We note that the reprimand came only after repeated warnings by the court to defense counsel to keep his cross-examination of State's witness Molly Oates within the scope of direct examination. These warnings were just as repeatedly ignored by defense counsel, and in our opinion unjustifiably so. The defense counsel was going far afield into collateral matters in an effort, he said, to impeach the credibility of the witness. In *Bewley v. State*, Okl.Cr., 404 P.2d 39 (1965) we held, quoting Wharton's Criminal Evidence Vol. III, at pages 266, and 269, that one may cross-examine with the intent of impeaching or discrediting a witness, and that so doing one is not confined to those matters elicited on direct examination, but inquiry into collateral matters may be had. We also said, however, that the extent of cross-examination in such case is within the trial court's discretion, and we will not reverse absent an abuse thereof.

■ The defendant does not complain however, of the court's limitation, but rather only of the threatened contempt citation. But, as we review the transcript, the trial judge made repeated attempts to limit the cross-examination, which attempts were not as we see it an abuse of his discretion, and defense counsel ignored and disobeyed the same, thereby fully warranting the reprimand. In response to defendant's contention that the reprimand should not have been made in the presence of the jury, we note *Puckett v. State*, Okl.Cr., 363 P.2d 953 (1961) wherein in this Court said:

"Lawyers in most instances represent their client with vigor and thereby feel compelled to object frequently to preserve their record. For this enthusiasm they should not be admonished in the presence of the jury unless their actions interfere with the decorum of the court or the orderly administration of justice."

The defendant's sixth assignment of error is without merit.

■ In his seventh assignment of error defendant complains of the admission of certain testimony of the victim of the offense. The pertinent testimony is reflected in the transcript as follows:

"BY MR. BURRIS: All right, what did you tell your sister Mary?

"A. I told her this bad man raped me."

The same question had been propounded earlier, to which the defendant objected. Said objections being overruled, the question and answer were thereby allowed. The defendant contends that the statement by the victim to her sister was not closely enough connected in time and space to comprise part of the res gestae of the offense. The statement was made at about 10:00 a. m., on the morning following the offense. By asserting that it was not part of the res gestae, defendant is seemingly contending that the statement was hearsay. With this the State disagrees, citing *Wadley v. State*, Okl.Cr., 553 P.2d 520 (1976), wherein we defined hearsay:

"Hearsay is evidence of an out-of-court declarant which is offered to prove the truth of the matter asserted in the declaration."

We are of the opinion that the statement was not hearsay, and that therefore the doctrine of res gestae is inappropriate. In *Laughlin v. City of Tulsa*, Okl.Cr., 492 P.2d 1131 (1972), this Court said:

"The defendant cites as error the questioning of a witness as to what she said to another person. . . . The general rule holds that 'evidence is hearsay when its probative force depends on the competency and, credibility of some person other than the witness' testifying. *In Re Porter's Estate*, 208 Okl.Cr. 475, 257 P.2d 517 (1953)."

In the instant case, the probative force clearly depends upon the competency and credibility of the witness on the stand. The witness was questioned only as to her own statements, not statements of others, and she was available for cross-examination by the defendant.

Similarly, the United States Supreme Court said, in *Anderson v. United States*,

417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974):

> "The primary justification for the exclusion of hearsay is the lack of any opportunity for the adversary to cross-examine the absent declarant whose out-of-court statement is introduced into evidence."

The foregoing considered, we are of the opinion that the complained of statements were not hearsay, since the witness was testifying as to her own statement, and since she was available for cross-examination. The statement not being hearsay, there is no need to consider whether or not it was admissible under one of the exceptions to the hearsay rule.

In his eighth assignment of error the defendant contends that it was error for the trial court to define the crime of sodomy in the language of the statute. Instruction No. 3 provided:

> "The applicable statutes of the State of Oklahoma provide and define the crime of Sodomy as follows, to-wit:
>
> 'every person who is guilty to the detestible and abominable crime against nature, committed with mankind————' "

The defendant contends that the adjectives "detestible" and "abominable" embellished the sordidness of the act to the prejudice of the defendant. He further contends that said language constitutes an impermissible attempt by the legislature and the court to comment on the evidence, and that the court should have given in substitution the defendant's proposed instruction.

■ We are of the opinion that the complained of language was not erroneously given, inasmuch as the instruction was in the language of the statute under which the defendant was charged. Furthermore, we have often said that instructions are to be considered as a whole, and that they are sufficient if they fairly and accurately state the law applicable to the case. *Turman v. State*, Okl.Cr., 522 P.2d 247 (1974). The defendant's eighth assignment of error is therefore without merit.

The defendant's ninth assignment of error contains many propositions dealing with alleged improprieties of the District Attorney, only two of which we need mention.

■ In the first proposition we shall deal with, defendant alleges error in that the court permitted Detective John Mullen to testify, over defense's objection, that after he had advised defendant of his Miranda rights, defendant chose to remain silent and asked for an attorney. In *Burroughs v. State*, Okl.Cr., 528 P.2d 714 (1974) we said in regard to similar testimony:

> "We recognize that this was error and do not condone the answer elicited from the police officer and we strongly suggest similar questions be omitted in the future because this type of question treads too closely upon forbidden ground."
>
> "There is a presumption that error of this kind is prejudicial, and in reviewing a case it becomes necessary for this Court to give full consideration to the record and determine whether said presumption has been overcome and that prejudice did not result."

In *Burroughs*, the trial court sustained the defendant's objection, whereas here, the defendant's objections were overruled. After careful review of the record in this case, however, we are of the opinion that no prejudice resulted from the complained of testimony due to the overwhelming evidence of defendant's guilt. A re-trial of this matter, with the complained of testimony excluded, would, we believe, result in the same verdict. Failing to find substantial prejudice to the defendant's right, then under the Doctrine of Harmless Error, 20 O.S. 1971, § 3001, we are unwilling to reverse.

■ One other proposition under the defendant's ninth assignment of error deserves mention. During closing argument the prosecutor twice argued to the jury in effect that because the defendant had previously been in prison, where "deviate" sexual practices are "common", that the jury could infer the defendant's guilt herein of the crime of anal sodomy. When this argument was first made the defendant raised no objection. After the prosecutor com-

mented along these lines a second time, defendant interposed an objection, which was sustained. The defendant now assigns these comments as error, with which we agree. They were highly improper comments on facts outside of the record which had no place in a court of law. However, since the objection was sustained, and the jury properly admonished, we hold that any error was thereby cured.

In his tenth assignment of error, defendant contends that he was denied a fair trial when the court permitted the State to introduce the testimony of Dr. Bell, after direct examination of the State's witness Jessie Coker, but before defendant had cross-examined Ms. Coker. After Dr. Bell's testimony was concluded, Jessie Coker was put back on the stand, and the defendant was given opportunity to cross-examine her.

The matter of order of proof is within the sound discretion of the trial court. *Williams v. State*, Okl.Cr., 373 P.2d 91 (1962). Not finding an abuse of discretion, nor prejudice to the defendant, the assignment of error is without merit.

In his final assignment of error defendant asserts that there was insufficient evidence to support a conviction for sodomy, in that the expert witness failed to find any evidence of penetration, as required by 21 O.S.1971, § 887. Concededly, Dr. Bell's testimony on this point is ambiguous and somewhat conflicting. In essence he stated that while he did not find any evidence of tears or abrasions in the rectum, nor any evidence of spermatozoa about the victim's person, he did say that intercourse could take place in the rectum without such damage occurring, and he said further "I think the child had intercourse in the rectum, in the anal area."

We are thus of the opinion that this proof coupled with the testimony of the victim, was sufficient evidence of penetration to satisfy the mandate of 21 O.S.1971, § 887. And, where there is sufficient evidence though conflicting, this Court will not invade the province of jury and upset their findings of fact. See, *Weber v. State*, Okl.

Cr., 389 P.2d 932 (1964). The defendant's final contention is without merit.

For the foregoing reasons the judgment and sentence is *AFFIRMED.*

BUSSEY, P. J., and BRETT, J., concur.