Paul Len STEDMAN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–263.

Court of Criminal Appeals of Oklahoma.

Aug. 24, 1977.

George R. Robinson, Lawton, for appellant.

Larry Derryberry, Atty. Gen., Douglas L. Combs, Asst. Atty. Gen., for appellee.

OPINION

PER CURIAM:

Appellant, Paul Len Stedman, hereinafter referred to as defendant, was charged in the District Court, Comanche County, Case No. CRF-76-439, with the offense of Murder in the Second Degree, in violation of 21 O.S.Supp.1973, § 701.2. The case was tried to a jury and a guilty verdict was returned, with punishment being assessed at an indeterminate term of ten (10) years to Life. From said judgment and sentence defendant has perfected this timely appeal.

Inasmuch as the sufficiency of the evidence is not questioned, we deem it necessary to only briefly recite the facts. Robert Prince, an attorney in Lawton, Oklahoma, stated that he was deceased's attorney. Deceased, Debbie Holcomb, had previously been married to defendant, but had secured a divorce from him and married Larry Holcomb. The deceased and defendant had had a child by their marriage. After the divorce, custody of that child, Christy, was awarded to defendant's parents. The witness further stated that Mrs. Holcomb had retained him for purposes of obtaining custody of Christy. The witness also related that a few days prior to the killing, Mrs. Holcomb had told the witness of a telephone conversation between the defendant and herself, wherein the defendant had stated to her that if she persisted in her attempts to gain custody of Christy he would kill her.

Larry Holcomb was the State's second witness, and he related that he had married deceased shortly after her divorce from defendant. He further related that defendant's parents had custody of Christy, but that Mrs. Holcomb and defendant had visiting rights on alternating weekends. On June 5, 1976, a Saturday, the witness and Mrs. Holcomb went to defendant's parents' house in order to pick up Christy, it being Mrs. Holcomb's weekend to visit with the child. The witness related that after they pulled up in front of the Stedman's house Mrs. Holcomb got out and approached the front door. At this point the witness observed the defendant shoot Mrs. Holcomb four times. The witness further related that about a week prior to the shooting Mrs. Holcomb had advised him of certain threats made to her by the defendant, again in connection with her attempts to gain custody of Christy.

The cause of death, multiple gunshot wounds, was stipulated to by both parties.

Carl Stedman, defendant's father, also testified for the State, saying in essence that although he was in the house at the time of the shooting, he heard, but did not see the gunplay.

Bennie Johnson and Bill May, Lawton police officers, testified as to their investigation of the crime, and as to certain statements made by defendant.

Ray Stedman, defendant's brother, testified for the prosecution, stating that the murder weapon, a .380 caliber automatic pistol, was his, and that he normally kept it in his bureau drawer at his parents' home. Following this witness' testimony the State rested.

Emanuel Tanay, a psychiatrist, was the defendant's only witness. He testified that it was his opinion that defendant was insane at the time of the homicide, based upon his examination of defendant. A tape recording of a conversation between the witness and defendant, recorded during an examination of the defendant by the witness, was played to the jury.

Dr. William Blythe, a psychiatrist employed at Western State Hospital in Ft. Supply, Oklahoma, testified on rebuttal for the State. It was his opinion that the defendant was not presently insane, and was not insane at the time of the homicide.

Ben Cooper, a doctor at Memorial Hospital in Lawton, Oklahoma, testified that the day after the homicide he had occasion to treat defendant for delirium tremens. However, he further stated that defendant was rational and coherent at the time.

Following this witness' testimony both the State and the defense rested.

Defendant's first assignment of error is that he was prejudiced when the

court allowed inadmissible hearsay into evidence. Two statements are complained of. The first statement was related by Mrs. Holcomb's attorney, Robert Prince, and is reflected in the transcript as follows:

"A. She told me that Paul had called her on Friday, May the 28th, and indicated that he had found out from his attorney that we were going to file the action to get custody of Christy, and that he was going to kill her because she was trying to get custody of the child."

The second statement complained of was testified to by deceased's husband, Larry Holcomb, and apparently related to the same threat. The transcript reflects the following during direct examination of Larry Holcomb:

"A. . . . she said Paul said that if she went back into court and attempted to get the child, Christy, to take her away from him, that he would blow her damn head off."

Both of these statements were made over defendant's objection.

We are of the opinion that the defendant's contentions were decided adversely to him in *Sallee v. State*, Okl.Cr., 544 P.2d 902, 907 (1976). In that case, as here, a witness was permitted to testify to statements made to her by the decedent concerning threats made by the defendant to the decedent. Recognizing such statements as hearsay this Court stated:

". . . antecedent declarations of a decedent made outside the presence of the defendant are admissible in a homicide case for the purpose of showing the decedent's state of mind toward the defendant *or to supply a motive for the killing.* . . ." (Emphasis added, citations omitted)

In the instant case, it is obvious that the hearsay statements complained of established a motive for the homicide. It thus follows that their admission was not error.

■ Defendant contends in his second assignment of error that the trial court erred in failing to give a limiting instruction on the declarations of the deceased, concerning the threats made to her by defendant. We need only note that no precautionary or limiting instruction was requested by the defendant. As such, any error in failing to give the instruction was waived. See, *Perkins v. State*, Okl.Cr., 514 P.2d 690 (1973).

■ Defendant contends in his third assignment of error that certain statements made by Dr. Blythe were hearsay and therefore inadmissible. While defendant was under observation at Western State Hospital, another patient inquired of him why he shot his wife. Defendant allegedly replied, "you shot a [mad] dog. She was a mad dog bitch." A hospital aide overheard this statement, and the aide told Dr. Blythe of it. Dr. Blythe was permitted to recite this statement at trial over defendant's objection.

Had the aide testified to this statement, it clearly would have been permissible, being the statement of a party. However, the statement as admitted is hearsay, inasmuch as Dr. Blythe was repeating words he had heard from an out-of-court declarant, the hospital aide, which declarant was not present for cross-examination, and the statement was offered for the truth of the matter asserted. See, *Soap v. State*, Okl.Cr., 562 P.2d 889 (1977).

■ However, we are of the opinion that the admission of this evidence, though error, was not so prejudicial as to mandate reversal of this case. The evidence proving that defendant killed his former wife was overwhelming, and in point of fact the defense of insanity in this case did not dispute the fact. The jury was permitted, at defendant's insistance, to listen to a tape recorded conversation between defendant and his psychiatrist wherein defendant discussed the killing. Further, the statement was not of such a nature as to prejudice defendant's contentions that he was insane at the time of the homicide. We thus conclude that the minds of the jury would not have found the State's case significantly less persuasive had the testimony as to defendant's admissions been excluded. The admission of the statement into evidence was, therefore, harmless error. See, *Schne-*

*ble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

█ Defendant's fourth assignment of error is that the trial court erred to the prejudice of the defendant by allowing the prosecutor to argue that Dr. Blythe, psychiatrist for the State, had in fact conducted tests and made evaluations thereof, when said doctor had not in fact made such tests, or evaluated such tests but rather members of his staff had done so. The argument of which complaint is made is reflected in the record as follows:

". . . It's not just his opinion. And he told you that the results of those tests showed there was no indication; his opinion was there was no indication of it; he had two other doctors come in—he consulted; he didn't rely just on what he thought; he called in two other doctors. They agreed with him; after examining him—

"MR. HAMLIN: Your Honor, I am going to object again. The District Attorney is deliberately misstating what Doctor Blythe testified to.

"BY THE COURT: All right, the District Attorney will be advised to stay within the record."

We note first that defense counsel did not ask the court to admonish the jury or to declare a mistrial. As often stated, in a situation such as this defense counsel must not only object but must also request the court to take such action as is necessary to correct the error. See, *Sam v. State*, Okl. Cr., 510 P.2d 978 (1973) and *Davidson v. State*, Okl.Cr., 550 P.2d 974 (1976).

Defendant asserts in his fifth assignment of error that because of an accumulation of error reversal of his conviction is mandated. We find no merit to this assignment of error.

For the foregoing reasons the judgment and sentence is AFFIRMED.