**Darryl Ray CONLEY, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–81–673.**

Court of Criminal Appeals of Oklahoma.

Sept. 12, 1983.

Thomas J. Ray, Jr., Asst. Public Defender, Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., Susan B. Agosta, Asst. Atty. Gen., Oklahoma City, for appellee.

MEMORANDUM OPINION

BUSSEY, Presiding Judge:

The appellant, Darryl Ray Conley, was convicted of Rape in the First Degree and

Robbery in the First Degree, in Oklahoma County District Court, Case No. CRF–80–3674, was sentenced to twenty-five (25) and twelve (12) years' imprisonment respectively, and he appeals.

September 13, 1980, the victim, N.K., was driving northbound on Interstate 35 from Midwest City, when an automobile bearing a Mid-Del Security sign on its passenger door pulled up even with the driver's side of her car. The man inside the automobile, whom the victim positively identified in court as the appellant, was dressed as a security officer with walkie-talkie in hand. After pulling the victim over to the side of the road and feigning a license check, the appellant told the victim to get into his automobile and informed her that he was "taking her downtown." Thereafter, the appellant drove her to a park whereupon he raped and robbed the victim. N.K. testified that her assailant stated several times that she should cooperate or he would "use his piece on her."

Officer Richard Zimmer, of the Oklahoma City Police Department, testified that he contacted Woody Grimes, owner of Mid-Del Security, and gave him a description of the suspect and his vehicle, as provided by the victim. Subsequently, Grimes related that he had an employee matching that description and named the appellant herein. The appellant was later apprehended at his home; his clothing worn at the crime scene was seized and submitted as evidence. At trial, the victim further testified concerning an extrajudicial identification of Conley in a photographic lineup.

## I.

The appellant alleges in his first assignment of error that the uniform found at his home by police officers was illegally seized and improperly admitted into evidence. The record discloses that, after procuring the appellant's name and address from Mr. Grimes, Officer Zimmer entered the appellant's home with permission from his wife. Conley, who was wearing a bathrobe, was asked to get dressed and to step outside to talk. He then went into his bedroom followed by Officer Zimmer. While in Conley's bedroom, the officer saw clothing which he felt matched the uniform that the victim had described the assailant as wearing. After admitting the uniform belonged to him, the appellant was arrested.

This Court has stated in *Tucker v. State,* 620 P.2d 1314 (Okl.Cr.1980), that there are three requirements which must be met in order for evidence to be admissible when a police officer has seized evidence in plain view without a valid search warrant. Those requirements include: 1) It must be immediately apparent that there is evidence of a crime; 2) the discovery of the evidence must be inadvertent; and, 3) the officer must have a prior justification for his presence and a lawful right to be there. The appellant has conceded that the first two requirements have been met. Thus, the central question before this Court is whether the police officer was lawfully in the appellant's bedroom before seizing the clothing as evidence. Officer Zimmer testified that he had initially followed the appellant into the bedroom because he "Felt [he] needed to stay with [appellant] for [his] own safety." In light of the fact that the appellant was employed as a security guard and such guards are known to carry firearms, we are of the opinion that Officer Zimmer made a valid intrusion into the bedroom and that such intrusion was reasonable under the circumstances for his own personal protection. See, *Kinser v. Cooper,* 413 F.2d 730 (6th Cir.1969). Thus, as the clothing was legally seized it was properly admitted into evidence. Accordingly, this assignment of error is without merit.

## II.

Next, the appellant contends that the trial court improperly admitted the victim's testimony concerning her original identification of the appellant as her assailant in a photographic lineup. The appellant would have this Court believe that such testimony was hearsay based on 12 O.S. 1981, § 2801. We disagree. A reading of the statute shows that in-court testimony of a witness regarding an out-of-court state-

ment made by that same witness is not hearsay.[1]

Furthermore, this Court has said in *Soap v. State,* 562 P.2d 889 (Okl.Cr.1977), citing *Anderson v. United States,* 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974), that:

> The primary justification for the exclusion of hearsay is the lack of any opportunity for the adversary to cross examine the absent declarant whose out-of-court statement is introduced into evidence.

■ Based on the aforementioned authority, we are of the opinion that the extrajudicial identification of the appellant was not hearsay, since the victim testified as to her own identification and since she was available for cross-examination. The appellant's second assignment of error is therefore without merit.

### III.

■ In his final assignment of error, the appellant contends that a police officer may have inferred to the victim that her assailant was included in a photographic lineup shown to her, thus tainting his in-court identification by an impermissibly suggestive lineup. We think not. Testimony reveals that the victim was merely informed that a suspect was in custody, and that she was to be shown a series of photographs for identification purposes.[2]

■ Moreover, when determining whether the victim's in-court identification of the appellant should be suppressed, the central question is whether the identification was reliable under the totality of the circumstances. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), and cases cited therein. In *Manson,* the United States Supreme Court set forth factors to be considered when determining the reliability of an identification. These factors include:

> 1) the opportunity of the witness to view the criminal during the alleged criminal act; 2) the witness's degree of attention; 3) the accuracy of the witness' prior description of the criminal; 4) the witness's level of certainty demonstrated at the confrontation; and, 5) the length of time between the crime and the confrontation.

Applying the aforementioned factors to the instant case, we find the following: 1) the victim had an excellent opportunity to view her assailant due to her close proximity to him during sexual intercourse which occurred in the daytime; 2) the victim paid close attention to her assailant's appearance, as 3) she was able to accurately describe his clothing and the vehicle in which the criminal act took place; 4) the victim positively identified the appellant as her assailant during the photographic lineup; and, 5) the photographic identification was

---

1. ARTICLE VIII. HEARSAY

§ 2801. Definitions.—For purposes of this Code:
1. A 'statement' is:
   a. an oral or written assertion, or
   b. nonverbal conduct of a person, if it is intended by him as an assertion;
2. A 'declarant' is a person who makes a statement;
3. 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

2. The transcript reads in pertinent part as follows:

A. He told me to look them over carefully.
Q. And, did you do that?
A. Yes, I did.
Q. Did you look at each and every picture before you said anything?
A. Yes, I did.

Q. All right. After you had seen each and every picture, what, if anything, did you say?
A. I recognized the one picture instantly and told him that this was the man.
Q. What is the picture? Is that in the stack there?
A. Yes, it is. It is the last one. This one.
Q. Okay. State's Exhibit 25, marked for identification?
A. Yes.
Q. Okay. How did you point this picture out?
A. I handed it to him and told him this was the man.
Q. Okay. What did he say?
A. He said, yes, this is the one they had in custody.
Q. Prior to your picking that picture out, did he in any manner suggest the picture marked State's Exhibit 25 to you as being the picture?
A. No, he did not.

made within two days after the criminal act. Accordingly, we are of the opinion that the witnesses identification of Conley was accurate under the totality of the circumstances and was based upon her observations at the crime scene, and thus, this assignment of error is without merit.

For the foregoing reasons, the judgment and sentence is AFFIRMED.

CORNISH and BRETT, JJ., concur.