**Paul G. WARNER and Grant Smith, Appellants,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–797.**

Court of Criminal Appeals of Oklahoma.

Aug. 31, 1977.

John T. Elliott, Public Defender, Oklahoma County, Frank Muret, Asst. Public Defender, for appellee.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Alan Foster, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellants, Paul G. Warner and Grant Smith, hereinafter referred to as defendants, were charged, tried and convicted in the District Court, Oklahoma County, before the Honorable Dick Jones, for the offense of Robbery With Firearms, in violation of 21 O.S.1971, § 801. Following a jury verdict, judgment and sentence was pronounced, assessing a punishment of ninety nine (99) years in the custody of the Department of Corrections, the State of Oklahoma. From said judgment and sentence the defendants have submitted this timely appeal.

This case concerns the Armed Robbery by four men of the residence of Mr. and Mrs. Hiram H. Link, 321 Blueridge Dr., Midwest City, at about 8:15 p. m. on Saturday, November 29, 1975. Mr. and Mrs. Link had guests on that date, including Mr. and Mrs. Stephens, Mr. and Mrs. Snowder, and their

three children, Gary, Randy, and Donnie. Gary Snowder, Hiram Link, Mildred Link, Janet Snowder, and Thurman Snowder, all testified at trial, each testifying to their observations at the time of the robbery. Each identified both defendants as two of the perpetrators of the robbery, and each testified to a line-up which they had attended, wherein identification of both defendants was made. Identification was based upon the defendants' race, physical stature, and voice.

Hiram Link further identified State's Exhibit No. 13 as a .38 caliber pistol, which was stolen from his home during the robbery. Identification was based upon an inscription of Mr. Link's name underneath the plastic pistol grip.

John William Eyman Jr., a co-defendant, testified for the State. He stated that he, Warner, Smith, and a Mr. Nelson, planned and executed the robbery of the Link residence. Eyman stated that he was a juvenile, and had been found guilty of the present robbery in a juvenile court. He further stated that he was promised nothing for his testimony, but was giving it in the hope of receiving some benefit. His accounts of the facts concerning the actual robbery were corroborative of the victims' accounts. He stated that Nelson, Smith and Warner were masked, but that he was not. He further stated that he entered the house first, and held several of its occupants at bay with a shotgun, until the others could enter. The victims were all forced to lie on the floor, where they were tied up with strips of bed sheets. Co-defendant Eyman further gave a description of some of the stolen items, including a .38 caliber pistol. He further stated that he had lived with the defendant Smith for some time, and that all four of them had planned the robbery at a pancake house on the morning of November 29th. After the robbery, the loot was divided at Mr. Nelson's home. The witness related how he filed the serial number off of the .38 caliber pistol which had been taken. Mr. Smith, however, kept this pistol. The witness further identified State's Exhibit No. 13 as that pistol.

Larry Davis, William Kiser, Juergen Schwarz, Don Ferguson, and Jack Hill, all with the Midwest City Police Department, testified as to their investigation of the case. Jack Hill testified that he had occasion to observe both defendants during the course of another armed robbery at a residence on Ridgehaven Road in Midwest City, at which time they were apprehended.

Scott Kinnamon testified that subsequent to the aforementioned robbery on Ridgehaven Road, he had occasion to locate a pistol in front of that residence, which was turned over to Don Ferguson. Both Kinnamon and Ferguson identified State's Exhibit No. 13 as that pistol.

No evidence was presented by defendants.

Defendants' first assignment of error is that the trial court erred in not declaring a mistrial upon defense counsel's objection to an evidentiary harpoon, in the form of evidence relating to crimes other than the one charged.

 The evidence of the other armed robbery was admissible for it tended to connect defendants on trial with the possession of State's Exhibit No. 13, the pistol, belonging to Mr. Hiram Link, and was admitted for that purpose. We have repeatedly held that evidence of other crimes, though generally inadmissible, is admissible when material to show identity of the defendants in the case being tried. See, *Wright v. State*, Okl.Cr., 531 P.2d 696 (1975).

 We note that complaint is made of other questions asked by the prosecutor or statements made by the witnesses concerning other crimes. In all these instances the court sustained the objections even though not all objections were timely made; no request for admonishment or for a mistrial accompanied said objections. We therefore hold that these alleged errors were either waived or cured by the trial court's sustaining of the objections to them.

■ For their next assignment of error the defendants urge that the trial Judge made comments to the defense counsel which prejudiced the defendants' right to a fair trial. We can find no merit to this argument. We have searched the record completely and find no such behavior. In support of their argument defendants cite cases which concern the trial court making disparaging remarks concerning the personal conduct of a trial counsel. None of the remarks referred to by defendants in this case were of that character. The trial court simply stated that he would like to expedite this matter and at no time personally criticized counsel in front of the jury.

"THE COURT: I think this. I think both of you can expedite this by making your answers short instead of saying in direct examination you said so and so. Just ask him the questions.

"MR. BLACK: I just want to clarify certain things, Your Honor.

"THE COURT: Don't—don't make detailed answers unless they're called for. I think we're taking too much time right here on this witness. We should have already concluded it."

The comments of the trial Judge in the instant case were no more than an admonishment to counsel to refrain from being argumentative with the State's witness and to expedite the matter. *Farmer v. State*, Okl.Cr., 507 P.2d 1303 (1973).

For the next three assignments of error the defendants complain of the instructions either given or not given by the court.

■ We first note that a careful examination of the record fails to reveal that defendant at any time objected to the instructions given or not given by the trial court and further, the defendant failed to present any requested instructions on his behalf. See, *Wells v. State*, Okl.Cr., 559 P.2d 445 (1977). However, after considering all of the instructions taken as a whole we find that the trial court did, in fact, instruct the jury in accordance with the law of the State of Oklahoma.

■ Defendant's sixth assignment of error, containing two propositions, is that the prosecutor committed error when he bolstered pretrial identification with evidence introduced in chief regarding alternatively what was observed in the line-up, and that the pretrial identification procedure itself tainted the in-court identification.

We need only note that absolutely no request was made for a hearing to inquire into the conduct of the line-up. Further, absolutely no objection was taken at trial by the defense to the in-court identification of defendants. Lastly, no objection was made at trial to the manner in which the prosecutor inquired of his witnesses concerning their pretrial identification of defendants at the line-up. This being so, these issues were waived. See *Anthamatten v. State*, Okl.Cr., 506 P.2d 959 (1973); *Randelman v. State*, Okl.Cr., 552 P.2d 90 (1976). The defendants' sixth assignment of error is therefore without merit.

■ For their final assignment of error the defendants allege that there were so many irregularities at trial that the cumulative effect prejudiced the rights of the defendants to have a fair and impartial trial.

From our examination of the record we find nothing that would justify modification or reversal and we therefore affirm the judgment and sentence of the trial court.

*AFFIRMED.*

BRETT, J., concurs.