Jerry R. RUSHING, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–81–206.

Court of Criminal Appeals of Oklahoma.

Jan. 24, 1984.

Rehearing Denied Feb. 24, 1984.

John L. Scott, Enid, for appellant.

Michael C. Turpen, Atty. Gen., Mary F. Williams, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Presiding Judge:

In the summer of 1979 the appellant, Jerry R. Rushing, and Debra Yvonne Rushing were in the process of getting a divorce. Ms. Rushing had moved from Tulsa, where they lived, to Enid. From July 25, 1979 to August 8, 1979, Ms. Rushing and the three Rushing children were living in the Enid Option House, a home for battered women. On August 8, 1979, the appellant and Quanita Rena Washington kidnapped Ms. Rushing and took her to Tulsa.

After the kidnapping episode ended, the appellant and Washington were charged in the Garfield County District Court with Kidnapping. Ms. Rushing testified against them at the October 3 and 4, 1979, preliminary hearing on the matter. They were bound over to stand trial, and apparently released on bail pending trial. They were subsequently convicted of the kidnapping, and this Court affirmed their convictions in an unpublished opinion *Rushing* and *Washington v. State*, Nos. F–80–562 and F–80–563 (Feb. 16, 1982).

The present case concerns the fact that, on January 11, 1980, which was after the preliminary hearing, but before the trial on the kidnapping charge, Ms. Rushing was murdered.

The appellant was charged capitally in the District Court of Garfield County for her murder. He was convicted of Murder in the First Degree and sentenced to life imprisonment. He has perfected an appeal to this Court, alleging twenty-one assignments of error.

On August 28, 1982, he filed a motion for new trial based upon newly discovered evidence, the contents of which prompted this Court to remand the matter for an evidentiary hearing. Subsequent to the evidentiary hearing, but before this Court could rule, the appellant filed a second motion for new trial based upon newly discovered evidence, and a brief in support thereof. Oral argument was had upon all these matters on the 27th day of September, 1983.

The attorney presently representing the appellant, John L. Scott, of Enid, is the third attorney in this case. Mr. Scott was appointed by the district court to perfect an appeal for the appellant. The first attorney, Stephen Jones, was allowed to withdraw for the reason that the appellant wished to retain other counsel. George R. Briggs, of Pawhuska, was retained by the appellant to represent him at trial, and was discharged after the conviction.

## I. EVIDENCE PRESENTED AT TRIAL

### A. STATE'S EVIDENCE

The State's key witness, Jerry Pollard, testified in substance as follows: On January 7, 1980, she and Quanita Washington embarked upon a trip which she thought would take them to California to pick up a car. Instead, they drove from Tulsa to Enid and obtained a motel room under a

false name. Over the ensuing three days, Pollard and Washington maintained intermittent surveillance on Ms. Rushing's home, the school the Rushing children attended, and the YMCA where the children often stayed.

On January 10, 1980, they telephoned the appellant and summoned him to Enid. The trio met at the motel where Washington and Pollard were staying. They drove past Ms. Rushing's home twice during the evening hours of January 10.

At approximately 1:00 a.m. on January 11, they returned to Ms. Rushing's house. Pollard was instructed by the appellant to go to Ms. Rushing's door and ascertain whether Ms. Rushing would speak to him and let him see the children. Pollard complied, knocked on the door and was invited inside by Ms. Rushing. Subsequently, the appellant burst into the house and began firing a gun at Ms. Rushing. Ms. Rushing returned fire, striking the appellant once. Pollard hid behind a chair when the shooting began, and after it stopped she and the appellant ran out of the house to the awaiting pickup.

The trio returned to the motel, where the appellant cared for his gunshot wound. Pollard then drove the pickup back to Tulsa, while the appellant and Washington went a different direction in the appellant's car.

Adolph J. Vogt, Jr., and Ruth Ann Lara both testified that, in January of 1980, they resided together in a house directly across the street from Ms. Rushing's residence. On January 11, at approximately 2:00 a.m., they were awakened by two loud noises, which they believed to be gunshots. They looked out of their window, and saw two persons emerge from Ms. Rushing's home, and run into the street. They then telephoned the Enid Police Department. Neither witness could identify the sex of the persons they saw fleeing.

The police officers who responded to the call testified they found the body of a deceased white female, whom they identified from a driver's license as Debra Yvonne Rushing, slumped on the living room couch inside the house. They also discovered a .38 caliber pistol tucked into the couch near the body. The pistol contained four expended shells.

One of the investigating officers had knowledge of the appellant's then pending charge for kidnapping Ms. Rushing. Based on this information, he broadcast over police radio the appellant's name, a description of his car and his license tag number, and directed that he be arrested.

Pursuant to that bulletin, the appellant and Washington were stopped at 2:44 a.m. on January 11, in Pond Creek, Oklahoma. The officer who stopped them first checked Washington's driver's license, and then approached the passenger's side of the car where the appellant was riding and demanded to see his driver's license. Upon ascertaining the identity of the appellant, the officer arrested both him and Washington.

Subsequent to having been given a *Miranda* warning, the appellant told the arresting officer that he had not been to Enid, but that he had been driving in the country hunting deer. His gunshot wound was discovered at the police station, but he refused to obtain medical assistance. The bullet was never removed from his hip.

The appellant's automobile was impounded and searched pursuant to a search warrant obtained after the arrest. A pair of green coveralls, a pair of brown gloves, a pair of blue jeans, a pair of underwear, a pair of socks and two rifles were found in the car. David Dixon, a criminologist for the OSBI testified that the coveralls and the blue jeans each had a hole in the right hip area. The blue jeans contained blood surrounding the hole, which was consistent with the appellant's blood type. A sample of hair taken from the coveralls was microscopically consistent with sample hairs taken from the head of Ms. Rushing. No gun powder residue was found on the gloves.

The preliminary hearing testimony of Ms. Teresa Sabo was read into evidence to establish that Ms. Rushing did own a gun; that she slept on the couch in the living

room; that she kept the gun tucked inside the couch; that she did not often allow persons to come into the house late at night; and that the deceased stated she would use the gun to "defend herself" against the appellant.

Dr. Fred B. Jordan, Associate Chief Medical Examiner for the State of Oklahoma, testified that the autopsy performed on Ms. Rushing revealed she died of gunshot wounds to the head and neck. She had sustained between five and seven separate wounds.

Mr. Tom Jordan, Ballistics Specialist for the Oklahoma State Bureau of Investigation, testified that of eight bullet fragments delivered to him from the Medical Examiner's office, which were taken from Ms. Rushing's body, six were identifiable as being .38 caliber. He further testified the bullets had such dissimilar marking characteristics from test bullets fired from the gun found in the couch beside Ms. Rushing's body, he concluded they were not fired from that gun.

Evidence was adduced through photographs, diagrams and the testimony of investigating officers to demonstrate that a gun battle had occurred inside Ms. Rushing's home. Testimony was given concerning the officers' attempts to determine the trajectory of the bullets, and the angle from which the bullets were fired. It was determined that one of the bullets had been fired into Ms. Rushing's home from the outside. An expended bullet was found lying on the front porch.

Lastly, the State presented evidence that the appellant temporarily escaped from jail on the weekend before the trial began.

## B. APPELLANT'S EVIDENCE

The appellant attempted to establish that Pollard killed Ms. Rushing.

William Ames testified that, approximately two weeks prior to the murder of Ms. Rushing, he had driven Pollard to Enid. Pollard asked him to do so, because she was going to shoot Ms. Rushing. Ames testified, however, that he saw no weapon

in Pollard's possession throughout the trip. Upon arriving in Enid, they drove past Ms. Rushing's home, and returned to Tulsa. Pollard slept during most of the trip.

Quanita Washington also testified that Pollard drove to Enid with William Ames approximately two weeks prior to the murder for the purpose of shooting Ms. Rushing then. She further testified that she knew Pollard owned a pistol at that time. Washington also testified that on the day she and Pollard arrived in Enid (January 7), Pollard had a pistol in her possession. Pollard made the telephone call to the appellant, which resulted in his trip to Enid on January 10. Pollard then purchased a bottle of ammonia.

Washington further testified that the murder of Ms. Rushing occurred in the following manner: At approximately 1:30 a.m. on January 11, she, Pollard and the appellant drove to Ms. Rushing's house in a pickup. The appellant and Pollard got out of the pickup. Pollard was carrying her gun and a plastic cup. After letting them out, Washington drove the pickup around the block and parked in the street near Ms. Rushing's home. Washington could see the appellant standing near the porch, but could not see Pollard. She then heard gunshots, and started to run toward the house. The appellant, who was holding his leg, motioned her back, yelling that "it" or "she" had "gone crazy."

Washington returned to the pickup. She heard at least one more shot before the appellant and Pollard returned to the pickup. Pollard was screaming, crying and apologizing for shooting Ms. Rushing. The appellant told her not to worry, because he would be blamed.

The appellant testified that Pollard's telephone call on the tenth of January led him to believe he might be able to see his children, if he went to Enid. When he, Pollard and Washington arrived at Ms. Rushing's house at approximately 1:00 a.m. on January 11, Washington remained in the pickup while he and Pollard went to the house. He did not have a gun, and was not aware that Pollard had one. Pollard was

instructed to go to the door and ask Ms. Rushing whether she would allow the appellant to see the children. Ms. Rushing invited Pollard in.

Soon Pollard appeared at the door and motioned for the appellant to come in. As he entered, Ms. Rushing screamed, "Now you'll pay for it," and shot him in the right hip. He stumbled outside, waved at Washington, and shouted, "Its gone crazy." He then heard gunshots and re-entered the house. He saw Pollard shoot Ms. Rushing once, and saw her put the gun to Ms. Rushing's head and shoot again. The appellant took the gun from Pollard. They ran to the pickup and drove away. He later threw the gun into a ditch along the highway as he and Washington left Enid. The gun was never found.

Vanita Burnett testified she babysat for Pollard's three children for a week in January of 1980. At approximately 5:00 a.m. one morning, Pollard came to her house to get the children. Pollard asked Ms. Burnett whether "the laws" or anyone else had been looking for her. Pollard also stated, without further explanation, "She's dead." She told Ms. Burnett that, should anyone come looking for her, Ms. Burnett was to say she had not seen Pollard, and she had not kept Pollard's children.

The appellant presented several witnesses to establish that Pollard worked in a bar, was a drug user, and that she drank straight whiskey.

One of the officers who investigated the murder scene testified that he found a plastic cup on the front porch. The cup contained a "cloudy" strong smelling substance. A photograph of the inside of the pickup the appellant, Pollard and Washington had driven to Enid in was introduced into evidence. That photograph depicted a bottle of ammonia in the floorboard.

## II. ISSUES PRESENTED UPON DIRECT APPEAL

### A. PRE-TRIAL

The appellant's tenth assignment of error is that a change of venue should have been granted in this case. He argues that, although no change of venue was requested by trial counsel, and the issue was furthermore not preserved for appellate review in the motion for new trial, a review of the transcript of the voir dire reveals an abuse of the trial court's discretion in not having granted a change sua sponte.

■■■ Of the 61 veniremen examined, 18 were dismissed due to preconceived opinions based on pre-trial publicity, 9 were dismissed because of convictions concerning the death penalty[1] and 4 were dismissed for cause on other grounds. Most of the jurors ultimately selected had heard something about the appellant, but many could not remember details, and all said they could be fair and impartial. We are convinced that there was no need for a change of venue. *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *Russell v. State*, 528 P.2d 336 (Okl.Cr. 1974); *Stafford v. State*, 669 P.2d 285 (Okl. Cr.1983). *Ake v. State*, 663 P.2d 1 (Okl.Cr. 1983).[2]

The appellant's assignment of error number eight is that the trial court erroneously failed to grant the discovery requested. The attorney who represented the appellant before he was tried filed an extensive request for discovery. The trial court granted the overwhelming majority of the appellant's request. The appellant has made no attempt to demonstrate upon this appeal that any of the evidence which he claims he was denied discovery of is actually in existence, or that he was surprised or prejudiced at trial thereby. A review of

---

1. The appellant has argued in other assignments of error that certain of the nine veniremen were improperly dismissed under *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). We have considered this argument in part C of this section, infra.

2. The appellant alleges that trial counsel's failure to request a change of venue evidences his ineffective assistance. However, since we are convinced no change would have been warranted had counsel so requested, we find no indicia of ineffective assistance.

the motion for discovery and the judge's order sustaining or overruling each request reveals that, due to the redundant nature of the motion, most of the information denied in one section was granted in another. This assignment of error is without merit.

## B. THE TRIAL STAGE

 The appellant's first assignment of error is that the police officer who arrested him lacked probable cause to do so; thus the evidence obtained from the resulting search of his car should have been quashed. This issue has been raised for the first time upon this appeal. We have held numerous times that failure to object to the legality of an arrest prior to entering a plea to the charge waives the issue for appellate review. *Raymer v. City of Tulsa*, 595 P.2d 810 (Okl.Cr.1979); *Fischer v. State*, 483 P.2d 1165 (Okl.Cr.1971); *Stone v. State*, 461 P.2d 962 (Okl.Cr.1969). Likewise, the appellant's failure to object to the evidence seized pursuant to the search warrant obtained subsequent to the arrest has been waived upon this appeal. *Webber v. State*, 545 P.2d 795 (Okl.Cr.1975).[3]

The appellant's second allegation of error is that the trial court erroneously failed to require corroboration of the testimony of Pollard. He argues that Pollard was an accomplice in the murder, and that 22 O.S. 1981, § 742 prohibits the conviction of one accomplice on the uncorroborated testimony of another accomplice.[4]

To be an accomplice, one must fall within the scope of 21 O.S.1981, § 172, which provides:

All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals.

 It is clear that Pollard was not an accomplice under either the State's or the appellant's case. As stated above, the State alleged that the appellant killed Ms. Rushing, and Pollard only attempted to arrange for him to meet with Ms. Rushing to discuss child visitation rights; while the appellant's version was that Pollard shot Ms. Rushing as he stood in the yard not knowing she was armed. Further, the evidence is contrary to the appellant's general assertion that Pollard "was an accomplice to whatever plans were being made between the Appellant and the two women," since no proof of any "general plan" or conspiracy among the three was offered by either side. The testimony was properly introduced, and there was no need for a limiting instruction.

 The appellant argues in his eleventh assignment of error that the trial court erroneously allowed a police officer to testify concerning the direction and paths of certain bullets which were fired. No objection was made to the testimony at trial, nor was the issue preserved in the motion for new trial. This assignment of error is

---

**3.** We are convinced that the failure to object to the arrest and the search and seizure of the appellant's car also does not evidence ineffective assistance of counsel. Even were we to assume that the appellant's assertions are correct, none of the evidence obtained was of sufficient magnitude to have prejudiced the appellant. The coveralls, blue jeans, underwear and brown gloves did not serve to identify the appellant. He admitted being present at the murder scene, and the only persons other than Pollard, Washington, the deceased and the appellant who witnessed the events that night, Mr. Vogt and Ms. Lara, could not describe the persons they saw. The discovery of the appellant's wound, the hole in the coveralls and jeans and the appellant's blood associated therewith were of no consequence, since there was other evidence, includ-

ing the testimony of the appellant himself, that he had been shot in the right hip on the night in question. The hair which was microscopically consistent with the victim's likewise proved nothing, since, as stated above, the appellant admitted being inside the victim's home. Lastly, the appellant made no incriminating statements as a result of his arrest.

**4.** 22 O.S.1981, § 742 provides,

A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

therefore not properly before this Court. *Turman v. State,* 522 P.2d 247 (Okl.Cr. 1974).[5] Having examined the record, we find no prejudice resulted to the appellant from the alleged error.

In his fourteenth assignment of error, the appellant argues that evidence of other crimes was improperly brought before the jury. The evidence of which he complains is 1) the conviction for kidnapping Ms. Rushing; 2) his escape from the Garfield County jail on the Saturday before the Monday his trial was to begin; and 3) that one of the rifles found in his automobile subsequent to his arrest had been stolen.

■ The fact that the appellant had been convicted of kidnapping Ms. Rushing was adduced upon cross-examination when the appellant took the witness stand. It was therefore admissible under the provisions of 12 O.S.1981, § 2609(A)(2).[6] Furthermore, it was admissible under 12 O.S. 1981, § 2404(B) to demonstrate the appellant's motive to effect the death of Ms. Rushing. The fact that the appellant filed a brief in support of his motion to prevent the State from bringing the matter up at trial on July 3, 1980, approximately 81 days prior to his trial, indicates that he had ample notice of the State's intent to do so. We therefore conclude the evidence was properly admitted.[7]

■ The evidence concerning the fact that the appellant and three others escaped from the Garfield County jail was presented during the State's case in chief. It is well established that evidence of escape from custody of an accused is admissible to show consciousness of guilt. *Odum v. State,* 651 P.2d 703 (Okl.Cr.1982).

■ The appellant was given notice that the State intended to introduce evidence of the escape on the Monday after the escape occurred (i.e., the first day of trial), by virtue of the State's application to endorse additional witnesses, and the resulting in camera discussion on the matter. The State notified the appellant as quickly as possible that the evidence would be introduced. See, *Seegars v. State,* 655 P.2d 563 (Okl.Cr.1982); *Wills v. State,* 636 P.2d 372 (Okl.Cr.1981). Moreover, the appellant's first three witnesses were the men with whom he escaped. They each reiterated the same basic details of the crime which the State's two witnesses gave. This Court has held in the past that when a defendant objects to the introduction of evidence which is admitted, and then introduces the same evidence himself, it is no ground for reversal, even if the evidence was incompetent. *Flynt v. State,* 91 Okl.Cr. 77, 216 P.2d 344 (1950); *Starks v. State,* 67 Okl.Cr. 156, 93 P.2d 50 (1939).

■ The appellant's third argument, that a police officer's testimony that one of the rifles seized from his car was stolen was improper, is well taken. The fact that the gun was stolen was of no relevance whatsoever in the present trial, since the rifle was not connected in any way with the

---

5. Trial counsel's failure to object to the testimony has been factored into our consideration of the effectiveness of counsel issue discussed in part C of this section.

6. Title 12 O.S.1981, § 2609(A)(2) states,

 A. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime:

 ✻ ✻ ✻ ✻ ✻ ✻

 2. Was punishable by death or imprisonment in excess of one (1) year, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the detriment of the defendant.

The fact that the conviction was on appeal to this Court at the time of the trial for the murder of Ms. Rushing is immaterial. See, 12 O.S.1981, § 2609(E):

 E. The pendency of an appeal from the conviction does not render evidence of that conviction inadmissible. Evidence of the pendency of an appeal is admissible.

7. The appellant's seventh assignment of error is that the trial court should have sustained his motion in limine to exclude evidence of the kidnapping charge. Since motions in limine are advisory in nature only, see *Teegarden v. State,* 563 P.2d 660 (Okl.Cr.1977), and the issue was relitigated when it arose at trial, our above holding likewise applies to this allegation of error.

murder of Ms. Rushing. Nonetheless, we do not believe the error was of sufficient magnitude to have affected the jury's verdict. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ The appellant's eighteenth assignment of error is that the transcript of the preliminary hearing testimony of Ms. Teresa Sabo was improperly admitted into evidence during the State's case in chief. The testimony introduced was an edited portion of the examination of Ms. Sabo by the attorney who was representing the appellant at the time of the preliminary hearing.[8]

The statutes which apply to this issue are as follows:

Title 12 O.S.1981, § 2804(B)(1)

B. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

1. Testimony given as a witness at another hearing of the same or another proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered or, in a civil action or proceeding, a predecessor in interest had an opportunity and similar motive to develop the testimony by direct, cross or redirect examination;

Title 12 O.S.1981, § 2804(A)(5)

A. 'Unavailability as a witness,' as used in this section, includes the situation in which the declarant:

5. Is absent from the hearing and the proponent of his statement has been unable to procure his attendance....

We are satisfied that the testimony of Ms. Sabo falls within these provisions.

Initially, the State adequately established Ms. Sabo's unavailability. The prosecutor informed the trial court that Ms. Sabo was on probation, but had been granted permission to move to Texas; that she was subpoenaed at the Texas address given the prosecutor, and the subpoena was returned because Ms. Sabo could not be found; that the prosecutor telephoned Ms. Sabo's probation officer in Texas, who referred her to the State probation office in Oklahoma City, who in turn referred her to another probation officer in Texas; that the second Texas probation officer informed the prosecutor that Ms. Sabo could not be located; and that, at the time of trial, a bench warrant for her arrest was outstanding.

Secondly, the fact that Ms. Sabo's testimony was given at the appellant's preliminary hearing in this case satisfies the requirement of § 2804(B)(1) that the testimony be given at "another hearing of the same or another proceeding...." Lastly, the appellant obviously had the opportunity to "develop" the testimony, since that portion admitted into evidence was the examination of the witness by the appellant's own attorney. There was no error.

The appellant's nineteenth assignment of error is that the trial court erroneously admitted "improper evidence." We have reviewed the excerpts contained in the brief, and are convinced that error, if any, resulting from the statements complained of did not prejudice the appellant. *Chapman v. California,* supra. Furthermore, the appellant has failed to cite any authority to demonstrate the existence or nature of any error he now alleges. *Sandefur v. State,* 461 P.2d 954 (Okl.Cr.1969). The assignment of error is dismissed.

■ The twelfth assignment of error is that the trial court made disparaging remarks about his trial counsel in front of the jury, which remarks prejudiced the appellant. The remarks complained of occurred during direct examination of the appellant. They are as follows:

[DEFENSE ATTORNEY questioning the appellant on Direct Examination]

Q. When did you first see, then, Quanita Washington and Jerry Pollard on Thursday after you had come to Enid?

PROSECUTOR:

---

**8.** The portions excised from the transcript were matters which were argued at the preliminary hearing, but of no relevance to the trial. No issue concerning those matters are raised on this appeal.

Your Honor, I'm going to object. I think that's leading. It hasn't been established tht [sic] she did see them.

THE COURT: Sustained.

[DEFENSE ATTORNEY]:

Q. When did you first see them?

PROSECUTOR: Your Honor, the question—my same objection.

THE COURT: Counsel, can you rephrase your question?

[DEFENSE ATTORNEY]:

Q. At what time did you see them?

PROSECUTOR: Your Honor, I would interpose the same objection.

DEFENSE ATTORNEY: I don't know any other way to ask, Your Honor. It is not leading. I have just got to ask a question. He said when he came and went to the motel and I am just inquiring at what time he saw them.

THE COURT: Counsel, there are appropriate ways, but if you don't know them, go ahead and ask the question.

DEFENSE COUNSEL: I'm sorry, I don't know any other way.

THE COURT: I will overrule the objection. You go ahead and answer the question. (Tr. 1056–57).

The above passage reveals no impropriety on the part of the trial court. We do not agree with the appellant's contention that the remark demonstrated favortism to the State. It was a proper reply to the attorney's statement that he knew no other way to ask the question. Furthermore, counsel was permitted to ask the question in the improper form. The appellant suffered no prejudice. See, *Warner v. State*, 568 P.2d 1284 (Okl.Cr.1977).

■ The appellant's thirteenth allegation of error is that the prosecutor made improper and prejudicial comments during cross-examination of the appellant and Washington.[9]

In regard to the second of the three excerpts complained of (see footnote 9, supra), we note that the question was proper, in light of our holding today that the evidence of the appellant's prior kidnapping conviction was properly admitted. Concerning the other two excerpts, to which the appellant's objections were sustained, we would point out that counsel failed to request an admonition to the jury. Failure to request an admonishment waives any error which could have been cured by the withdrawal of those remarks. *Wade v. State*, 624 P.2d 86 (Okl.Cr.1981). Nonetheless, we are of the opinion that the comments were limited in nature, and did not prejudice the appellant.

■ The appellant argues in assignment of error number sixteen that the prosecutor improperly cross-examined Larry Wayne Nichols, who escaped from the Garfield County jail along with the appellant, concerning Nichols' prior felony convictions. Upon cross-examination, Nichols admitted that he had been convicted of at least five felonies within the past ten years. The prosecutor was also permitted, over the appellant's objections, to delve into the

---

9. The comments complained of were as follows:

(PROSECUTOR)

Q. Who had these drugs that you say you and Miss Pollard took?

(MS. WASHINGTON)

A. She had some Black Mollies in her purse. I had some RJS's in mine.

Q. Is that the only drug you had in your purse, ma'am?

A. No ma'am. I had some marijuana.

Q. You forgot to mention that earlier.

MR. BRIGGS (DEFENSE COUNSEL) We object to counsel making that statement as improper.

THE COURT: Sustained. (Tr. 1007).

\* \* \* \* \* \*

(PROSECUTOR TO APPELLANT)

Q. At the time you came to Enid, was the kidnapping charge for which you were subsequently convicted pending at that time?

MR. BRIGGS: We object to that if Your Honor please as improper and not proper cross-examination.

THE COURT: Overruled, exception allowed. You may answer the question. (Tr. 1007–1008).

\* \* \* \* \* \*

(PROSECUTOR)

Q. During your earlier testimony, Mr. Rushing, I noticed that you cried. But you recovered from that rather rapidly.

MR. BRIGGS: We object to counsel's remarks as being improper.

THE COURT: Sustained. (Tr. 1100–1101).

witness' criminal record as far back as 1953. The appellant alleges that the admission of the witness' felony convictions older than ten years was error. We agree.

Title 12 O.S.1981, § 2609(B) states:

B. Evidence of a conviction under this section is not admissible if a period of more than ten (10) years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is later, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. Evidence of a conviction more than ten (10) years old, as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

No written notice was given the appellant that the prosecutor intended to use the witness' convictions over ten years old. Secondly, the transcript does not reveal that the trial court had sufficient "specific facts and circumstances" of Nichols' prior felonies to justify a determination that their probative value outweighed their prejudicial effect. The grounds for overruling the appellant's objections were, "It is lawfully allowed because of the number of offenses." Neither the evidence code nor case law support such reasoning.

Although we believe the prosecutor should not have been allowed to question the witness concerning his convictions over ten years old in this case, we must view the error in light of the circumstances to determine the effect, if any, of the resulting error. The witness had at least five convictions which were properly made known to the jury. This Court is convinced that,

although improper, the evidence concerning convictions older than ten years had no discernable effect upon the witness' credibility; and did not reflect upon the appellant. We therefore conclude the error was harmless beyond a reasonable doubt. *Chapman v. California*, supra.

At the close of the State's case in chief, the trial court overruled the appellant's motion to withdraw the testimony of the State's witnesses who testified concerning the jail break, demurrer to the information and motion for a directed verdict, motion to reduce the charge to second-degree murder, motion to withdraw the bill of particulars for failure to grant a preliminary hearing on the matter, and motion to discharge the jury for *Witherspoon v. Illinois*, supra, violations. The appellant argues in his fifteenth assignment of error that the trial court's rulings were improper.

We have previously held that the testimony concerning the jailbreak was proper, thus the argument concerning this matter is meritless. We have considered the issues surrounding the bill of particulars and the *Witherspoon* allegations in part C of this section, infra. For the reasons therein discussed, these arguments are likewise meritless. We are also convinced that the trial court properly refused to grant the motions for a directed verdict and reduction of the charge. The facts set forth at the outset of this opinion demonstrate that a prima facie case against the appellant was established. *Renfro v. State*, 607 P.2d 703 (Okl.Cr.1980). The motions were properly denied.

## C. THE SENTENCE

 The appellant's third, fourth, fifth, ninth, seventeenth and, in part, fifteenth assignments of error present various attacks on the constitutionality of the death penalty, and on the procedures employed in support of the death penalty in this case.[10]

10. The allegations of error are, respectively, that the trial court erroneously refused to strike the bill of particulars filed in support of the death penalty; that the death penalty is unconstitutional; that a preliminary hearing should have

been held on the bill of particulars; that the trial court erroneously allowed the State to file additional facts in support of the bill of particulars on the day of trial; that the trial court erred in allowing incorporation by reference the evi-

These arguments are all moot, because the jury recommended the appellant receive a sentence of life imprisonment, and he was sentenced accordingly. See generally, *Sexson v. State*, 620 P.2d 1326 (Okl.Cr.1980); *Washington v. State*, 568 P.2d 301 (Okl.Cr. 1977).[11] None of the arguments are of such a nature as to require consideration notwithstanding the sentence imposed.[12]

## III. APPELLANT'S MOTIONS FOR NEW TRIAL UPON NEWLY DISCOVERED EVIDENCE

■■■■ This Court is mindful that our consideration of the appellant's allegations upon his motions for new trial and the evidence in support thereof, must be made in light of the evidence produced at trial. The appellant has the burden of proving that the newly discovered evidence, if presented at trial, would have changed the jury's verdict. 22 O.S.1981, § 952(7); *Castleberry v. State*, 522 P.2d 257 (Okl.Cr. 1974); *Trowbridge v. State*, 502 P.2d 495 (Okl.Cr.1972).

### A. MOTION DATED AUGUST 25, 1982

This Court remanded the cause for an evidentiary hearing on the allegations by order dated September 8, 1982. The hearing was held on November 12, 1982. Judge Green entered his findings of fact and conclusions of law on the same date, in which he determined insufficient evidence was produced by the appellant to justify ordering a new trial. The appellant's contentions and evidence in support of this motion are twofold: (1) that defense counsel consumed alcohol at various times during the trial; and (2) that subsequent to his conviction and incarceration for the murder of

Ms. Rushing, Pollard wrote him a note, confessing that she committed the murder.

### (1) THE CONDUCT OF THE DEFENSE ATTORNEY

The appellant's father testified at the evidentiary hearing that, during a recess at one point in the trial, he observed the appellant's defense attorney take a drink from what he believed to be a whiskey bottle. He further testified that the attorney offered him a drink. The appellant's mother testified that she smelled liquor on the attorney's breath during the trial. The appellant also testified he had smelled liquor on his attorney's breath.

In addition, an offer of proof was made by the appellant that, if two absent witnesses were present, they would have substantiated the testimony of the appellant, his father and his mother.

The Assistant District Attorney who prosecuted the appellant's case testified under oath that she had several face to face confrontations with the appellant's trial attorney during the trial; and that she never detected the odor of liquor.

■■■ This Court notes its extreme concern over the gravity of the charge that a member of the bar was drinking alcohol during a trial. Certainly such behavior, if proven to be true, is a serious matter, and is not to be condoned. The question remains, however, whether the attorney's consumption of alcohol, even if it occurred, prejudiced the appellant, or affected the outcome of his trial.

Having thoroughly reviewed the lengthy transcript of the appellant's trial, we find no conduct of counsel (or lack thereof) which would substantiate the appellant's

---

dence from the first stage of the trial to be considered in the second stage; and that the jury was improperly selected and impanelled, in violation of *Witherspoon v. Illinois,* supra.

**11.** The appellant's sixth allegation of error is that the trial court should have sustained his motion to quash the information. The motion to quash and the authority incorporated from the pretrial briefs in support thereof consist of attacks on the procedural and constitutional aspects of the Oklahoma death penalty statutes.

For the reasons discussed above, this assignment of error need not be addressed.

**12.** Even assuming the appellant's *Witherspoon* argument has merit, the appellant has not shown that such a possible violation resulted in a "prosecution prone" jury. We therefore find no violation of the appellant's constitutional rights. *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

claim that he was in any manner prejudiced by his attorney's alleged alcohol consumption. The trial court properly concluded there was no basis to sustain the appellant's motion for new trial on this ground.

### (2) THE CONFESSION NOTE

■ At the evidentiary hearing on this matter, the appellant's parents testified they received the following letter in the mail, addressed to the appellant:

6–11–81

J.R.,

I'm sorry I had to shoot Debra. My gun shot Her [sic] by itself. forgive [sic] me J.R., Debra made me shoot her. I suppose Mrs. Stocker is happy she got you.

Love,

/S/ Jerry Pollard

The letter was handwritten. The appellant's mother discarded the envelope in which the letter came, and mailed the letter to the appellant. The appellant testified that, upon receiving the letter, he had several photocopies made in the prison library. He then sent copies to various persons. He further testified that the original copy was stolen from his prison cell.

Pollard denied she had ever written or seen such a note.

Four experts in the field of "disputed documents analysis" testified concerning whether Jerry Pollard authored the note in question. Since the original of the note was not available, the experts made their comparison on the basis of photocopies. The two experts who testified on behalf of the appellant had been furnished a photocopy of the alleged confession note, along with photocopies of police reports containing Pollard's handwriting. The experts also compared the photocopy of the note to the original copies of the police reports during a ten-minute recess at the evidentiary hearing.

The two experts who testified on the appellant's behalf stated that, based on the characteristics of the writings, they were of the opinion all the documents they examined were written by the same person. The two experts who testified for the State maintained that they could not reach a positive conclusion of the authorship of the alleged confession note because the photocopy precluded performance of the most delicate and revealing examinations. All four stated the possibility existed that the confession could have been forged by tracing from other documents.

We are convinced that the note and the conflicting expert testimony concerning its authenticity would not have affected the jury's verdict, had that evidence been presented. The testimony of several persons was presented at trial by the appellant in an attempt to show that Pollard was the culprit in the murder. The jury obviously chose not to believe the appellant's defense. We believe that a note, of unknown origin and unproven authorship, which was produced by a man from within the walls of a prison where numerous forgers doubtless reside, would not have had sufficient weight or credibility to affect the jury's verdict.

### B. THE MOTION DATED MARCH 30, 1983

The appellant personally wrote the second motion for new trial and brief in support thereof. They were submitted to this Court by his attorney pursuant to 22 O.S.Supp.1982, Ch. 18, App. Rule 3.4E. He argues at length excerpts of the trial transcript which he construes to be evidence of inconsistency and perjury on the part of Pollard. He also argues that evidence that Pollard was allegedly a prostitute and drug user, that she allegedly murdered a man, that she allegedly robbed a store and that she committed other instances of bad or criminal acts should have been introduced into evidence to affect her credibility.

It should be noted that most of the evidence the appellant argues should have been brought is speculative and unproven, and would not have been admissible under the evidence code. See, 12 O.S.1981, §§ 2607–2609. It should also be noted that, throughout the trial, the appellant's attorney attempted, and to a limited extent,

succeeded, in proving that Pollard used drugs, worked in a bar, drank straight whiskey, and had drugs in her possession during the week of January 7, to January 11, 1980.

Also attached to the motion are a sheriff's office report of a complaint filed by the appellant's mother on October 21, 1980 (after the appellant's conviction and incarceration), and an affidavit, purporting to be that of the appellant's son, who allegedly witnessed some aspects of the murder of Ms. Rushing.

The sheriff's office report states that, on October 16, 1980, a woman whom Mrs. Rushing identified as Pollard drove a car into her front yard, pointed a pistol at her and shouted, "I've killed one mother fucking Rushing bitch and you will be the next bitch." The complaint was dismissed for lack of prosecutorial merit.

■■■ The affidavit purporting to be that of the appellant's son states that on the night of the murder the son was asleep on the kitchen floor in the victim's house, that he heard women arguing, that he saw a blond haired woman and a dark haired woman in the living room, that he heard loud noises and saw flashes and that he did not see his father that night.

It is undisputed that the appellant was present during the events which led to Ms. Rushing's death. Although the only direct evidence that the appellant, and not Pollard, committed the murder was the testimony of Pollard, the facts that Pollard was apparently not acquainted with the victim, that the appellant made the trip to Enid from Tulsa on the evening of January 11, that he was charged with Kidnapping Ms. Rushing and that she was a witness against him at the time of the murder, that he admittedly took the murder weapon and disposed of it as he and Washington fled Enid, and that he escaped from jail on the weekend before the murder trial was to begin, lend ample support to the jury's conclusion that the appellant committed the murder. We are convinced that the jury's verdict would remain the same had the above allegations been presented at the

appellant's trial. *Castleberry*, supra; *Turnbow*, supra.

## IV. EFFECTIVENESS OF COUNSEL

The appellant has argued upon direct appeal and in his August 25 motion for new trial based upon newly discovered evidence that he received ineffective assistance at trial.

■■■ An accused person is constitutionally entitled to reasonably competent assistance of counsel at trial. *Johnson v. State*, 620 P.2d 1311 (Okl.Cr.1980). This does not mean, however, that he is entitled to flawless or victorious counsel. *Smith v. State*, 659 P.2d 330 (Okl.Cr.1983). A defendant's heavy burden of proving he was not adequately represented at trial is not sustained by demonstrating possible error in trial counsel's judgment. *Felts v. State*, 588 P.2d 572 (Okl.Cr.1978); *Walker v. State*, 550 P.2d 1339 (Okl.Cr.1976).

A review of the record reveals that trial counsel vigorously and zealously cross-examined the State's witnesses. He attempted throughout the trial to impeach Pollard by illustrating inconsistencies, introducing other witness' testimony, and presenting evidence of Pollard's alleged drug and alcohol use. He adequately presented the appellant's defense, and argued his case extensively. The assignment of error is without merit.

## V. CONCLUSION

This Court has thoroughly reviewed the record, the transcripts of trial and of the evidence heard in support of the motions for new trial, and has carefully considered the arguments made by counsel in the briefs and upon oral argument. Inasmuch as we have found no error requiring modification or reversal in the foregoing assignments of error, we find no accumulation of error to warrant such a result. *Brinlee v. State*, 543 P.2d 744 (Okl.Cr.1975). Accordingly, the appellant's twenty-first assignment of error is dismissed; both motions for new trial based upon newly discovered

evidence are overruled; and the judgment and sentence is hereby AFFIRMED.

CORNISH and BRETT, JJ., concur.