53 F.3d 343
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Jerry R. RUSHING, Petitioner-Appellant,
v.
Ronald CHAMPION, and Attorney General of the State of
Oklahoma, Respondents-Appellees.
 No. 94-5205.
 (D.C. No. 88-C-1288-E)
 United States Court of Appeals, Tenth Circuit.
 April 27, 1995.
 
 Before ANDERSON, BALDOCK and BRORBY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Petitioner Jerry Rushing appeals the district court's order denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. 2254. The district court concluded that while the State failed to disclose a statement made by one of Mr. Rushing's children prior to Mr. Rushing's first degree murder trial, relief was not warranted because the statement was not "material" under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny. Our jurisdiction arises under 28 U.S.C. 1291[2] and we affirm.
 
 
 3
 The facts and the lengthy procedural history of this case are undisputed and we assume the reader is familiar with three related opinions in this case: Rushing v. State, 676 P.2d 842 (Okla.Crim.App.1984) (Rushing I ); Rushing v. Champion, 1991 WL 99034, reported as Table Case at 935 F.2d 278 (10th Cir. June 6, 1991) (Rushing II ); Rushing v. Champion, 1994 WL 75861, reported as Table Case at 19 F.3d 34 (10th Cir. Mar. 8, 1994) (Rushing III ). The facts pertinent to this appeal are as follows.
 
 
 4
 We observed in Rushing III that prior to the evidentiary hearing, the State filed a supplemental response to Mr. Rushing's petition. In the response, the State admitted, for the first time in what was then the twelve year history of this case, that it possessed a transcript of a tape recorded statement given by then eight year old Jerry Chuck Rushing, one of petitioner's children, regarding what he witnessed on the night his mother was killed. The transcript of this statement was introduced as an exhibit at the evidentiary hearing. In Rushing III, we held this statement should have been disclosed in response to a specific discovery request by the defense, made prior to trial, for impeachment evidence. See Rushing III, at * 2, * 3 n. 3. But while we decided this statement should have been disclosed and that it was evidence favorable to the defendant under Brady,[3] we did not decide whether this statement was "material." Instead, we vacated the district court's judgment and remanded the case to allow the district court to make the initial decision whether this statement was "material." See id. at * 3. We also instructed the district court to "consider the effect Jerry Chuck's 1980 statement may have had on the course of Mr. Rushing's defense." Id.; see also United States v. Bagley, 473 U.S. 667, 683 (1985) (opinion of Blackmun, J.). On remand, the district court concluded this statement was not "material" under Brady because it was more likely to undercut Mr. Rushing's defense that Ms. Pollard shot Ms. Rushing. Mr. Rushing appeals, asserting this ruling was erroneous.
 
 
 5
 We recently summarized the legal principles governing review of Brady claims. See Smith v. Secretary of New Mexico Dep't of Corrections, 1995 WL 104660, * 18-* 22 (10th Cir. Mar. 6, 1995). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " Id. at * 22 (quoting Bagley, 473 U.S. at 682). One aspect of the materiality determination permits the reviewing court to "consider directly any adverse effect that the prosecutor's failure to respond might have had on the preparation or presentation of the defendant's case." Bagley, 473 U.S. at 683. The ultimate question of "materiality" presents a mixed question of law and fact, subject to de novo review. See Smith, 1994 WL 104660, at * 22.
 
 
 6
 In Rushing III, we summarized the relevant testimony adduced at trial from the Court of Criminal Appeals' decision in Rushing I.[4] The state's primary witness at trial was a woman named Jerry Pollard. She testified that she and Mr. Rushing went to the residence of Mr. Rushing's estranged wife, Debra, and that while inside the house a gun battle ensued in which Mr. Rushing killed Debra. Ms. Pollard was the only witness whose testimony directly established Mr. Rushing as the killer. Ms. Pollard's testimony was contradicted by Mr. Rushing and by a third party to the incident, Ms. Quanita Renee Washington. Rushing III, 1994 WL 75861, at * 2 (discussing Rushing I, 676 P.2d at 845-48). We then described the substance of Jerry Chuck Rushing's statement, which we concluded should have been disclosed.
 
 
 7
 In his recorded statement to the police shortly after his mother's murder, Jerry Chuck Rushing indicated that there were six people in the house when his mother was murdered. Three of the people were the Rushing children. The other three, all adults, were his mother, his father, and a third woman the boy identified as Quanita Renee Washington. This statement directly contradicted the testimony of Ms. Pollard, the state's key witness, that she had witnessed the murder, and could have been used by the defense for impeachment purposes.
 
 
 8
 Id. In addition, Jerry Chuck Rushing stated the gunshots he heard when his mother was killed did not sound like they came from his father's gun. He stated his father's gun made a "BOOM" sound, whereas the gun used to shoot his mother made a "PHEW" sound.[5]
 
 
 9
 In support of his contention that this statement was material, Mr. Rushing asserts this statement contained critical impeachment evidence of Ms. Pollard, the state's key witness, because it arguably shows she was not present in the house when Ms. Rushing was killed.[6] Ms. Pollard, Mr. Rushing, and Ms. Washington all testified that Ms. Pollard and Mr. Rushing went inside Ms. Rushing's house on the night of the killing, while Ms. Washington waited outside in the car. See Rushing I, 676 P.2d at 846-47. But according to Jerry Chuck Rushing's statement, he saw Ms. Washington in the house, although he could not recall if Ms. Pollard was present.
 
 
 10
 Mr. Rushing next contends the failure to disclose this statement hindered his defense strategy at trial because he could have used this statement to show Ms. Washington was the perpetrator. He also asserts that if this statement had been disclosed at trial, and thus been used in an effort to discredit Ms. Pollard's testimony, then he might not have elected to testify in his own defense at trial, and would not have exposed himself to cross-examination. On cross-examination, the prosecutor elicited the rather damaging fact that Mr. Rushing had a prior conviction for kidnapping his ex-wife Debra Rushing prior to the time he allegedly killed her.
 
 
 11
 The district court was not persuaded, and reasoned:
 
 
 12
 The statement places Rushing inside the house as opposed to merely entering the door, and it contradicts the testimony of both Rushing and Washington in several respects. Additionally, it is highly unlikely that Rushing would have used the statement to contradict Pollard's testimony that she was inside the house at the time of the murder, or that the statement would have changed the outcome of the trial, since to place her outside the house would have undermined Rushing's attempt to establish that Pollard committed the murder.
 
 
 13
 We agree with the district court that this statement was not "material" under Brady and its progeny for several reasons. First, any attempt to impeach Ms. Pollard with this statement would have strengthened the case against Mr. Rushing by affirmatively placing him inside the house rather than in the doorway. Second, this statement was also arguably inconsistent with Mr. Rushing's defense that Ms. Pollard was the shooter. Third, we fail to see any adverse impact on his trial preparation attributable to this nondisclosure. His argument that if he had been aware of this statement, he would have tried to establish that Ms. Washington was the perpetrator is unavailing because it is entirely inconsistent with his version of what happened, and to which he testified under oath at trial--that "[h]e saw Pollard shoot Ms. Rushing" while Ms. Washington "remained in the pickup while he and Pollard went to the house." Rushing I, 676 P.2d at 847-48. We are not willing to assume that defense counsel would suborn perjury by attempting to place responsibility for this crime on Ms. Washington while knowing that this theory was directly in conflict with Mr. Rushing's account of what happened.
 
 
 14
 Moreover, Mr. Rushing's argument that he might not have testified had this statement been disclosed because of cross-examination is simply implausible. To argue he would have hinged his defense on Jerry Chuck Rushing's noncommital statement that he did not recall seeing Ms. Pollard in the house, instead of testifying that he saw Ms. Pollard shoot Ms. Rushing, defies common sense because Jerry Chuck Rushing's statement did not truly "impeach" Ms. Pollard's account of what happened. Thus, in the absence of Mr. Rushing's own testimony, he would have significantly weakened his only plausible defense.
 
 
 15
 Because we hold the district court properly concluded the contents of Jerry Chuck Rushing's statement were not material, we agree that federal habeas corpus relief was not warranted.[7] Therefore, we GRANT Mr. Rushing's request for a certificate of probable cause, and we AFFIRM the district court's order denying Mr. Rushing's petition for a writ of habeas corpus.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The district court granted Mr. Rushing's motion for leave to appeal in forma pauperis, and although the district court denied Mr. Rushing's motion for a certificate of probable cause under 28 U.S.C. 2253, we grant a certificate to enable us to reach the merits
 
 
 [3]
 "To establish a Brady violation, the defendant must establish: 1) that the prosecution suppressed evidence; 2) that the evidence was favorable to the accused; and 3) that the evidence was material." United States v. Hughes, 33 F.3d 1248, 1251 (10th Cir.1994). As we discuss below, it is questionable whether this statement was "favorable" to Mr. Rushing; nonetheless, for purposes of this appeal, we adhere to our earlier determination that this statement constituted evidence favorable to Mr. Rushing
 
 
 [4]
 Pursuant to 28 U.S.C. 2254(d), we are required to afford a presumption of correctness to a state court's determinations of historical fact. See, e.g., Case v. Mondragan, 887 F.2d 1388, 1393 (10th Cir.1989), cert. denied, 494 U.S. 1035 (1990)
 
 
 [5]
 The gun used to kill Ms. Rushing was never found, and thus, the prosecution was unable to rely on ballistics evidence to connect the bullets found in Ms. Rushing's body to Mr. Rushing's gun
 
 
 [6]
 We use the term "arguably" because at no time did Jerry Chuck Rushing affirmatively declare that Ms. Pollard was not in the house. He simply stated he remembered seeing three adults, and that he did not recall seeing Ms. Pollard that night. Given Ms. Pollard's testimony that she "hid behind a chair when the shooting began," Rushing I, 676 P.2d at 846, it is certainly possible Ms. Pollard was present but that Jerry Chuck Rushing did not see her
 
 
 [7]
 In so holding, we do not, either expressly or by implication, condone or approve of the State's failure to have disclosed this statement prior to trial. While the record does not reveal why the State failed to disclose this statement, we need not attribute a reason or a motive for the nondisclosure in order to resolve this appeal because good faith or bad faith is irrelevant under Brady. See Brady, 373 U.S. at 87. All we hold is on the facts of this case, Mr. Rushing has not carried his burden of showing that this statement was material so as to warrant habeas relief